**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
               :

In re:                   :       Chapter 11
               :

PROTEUS DIGITAL HEALTH, INC.,   :      Case No. 20-11580 (____)
               :

        Debtor.[1]        :
               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**(I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION TO SECURED LENDER,**
**(III) SCHEDULING FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

By this motion (the "<u>Motion</u>"), the above-captioned debtor and debtor in possession (the "<u>Debtor</u>") moves the Court for the entry of an order, in substantially the form attached hereto as <u>Exhibit A</u> (the "<u>Interim Order</u>"), and a final order (the "<u>Final Order</u>", and together with the Interim Order, collectively, the "<u>Cash Collateral Orders</u>"), pursuant to sections 105, 361, 362, 363, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1(b), 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), inter alia: (i) authorizing the Debtor's use of Cash Collateral (as defined below); (ii) granting adequate protection to the Prepetition Lender (as defined below) for any diminution in value occurring from and after the Petition Date of its interests in the Prepetition Collateral (as defined below) as of the Petition Date, including the Cash Collateral; (iii) subject to entry of the Final Order, waiving the Debtor's right to surcharge the Prepetition Collateral (as defined below).  In support of this Motion, the Debtor relies upon

---

[1]    The last four digits of the Debtor's taxpayer identification number are 2680. The Debtor's corporate headquarters is located at 2600 Bridge Parkway, Redwood City, California 94065.

and incorporates by reference the *Declaration of Lawrence R. Perkins in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"),[2] which is being filed concurrently herewith and is incorporated by reference herein.  In further support of this Motion, the Debtor, by and through its undersigned proposed counsel, respectfully represents:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue of this case and this Motion in this District are proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Local Rules 2002-1(b), 4001-2 and 9013-1(m).

4.      Pursuant to Rule 9013-1(f) of the Local Rules, the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## GENERAL BACKGROUND

5.      On June 15, 2020 (the "Petition Date"), the Debtor commenced a case by

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

ACTIVE/103662746.4

filing a petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  The Debtor continues to manage and operate its business as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.

6.     To date, no creditors' committee has been appointed in the Chapter 11 Case by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Case.

7.     Founded in 2002, the Debtor is a pioneer and leader of the "Digital Medicines" industry.  "Digital Medicines" are oral pharmaceuticals formulated with an ingestible sensor aimed at tracking a patient's adherence to prescribed medication treatments. When patients use Digital Medicines, their mobile devices collect information about medication taken and safely transmit the data via the cloud to the healthcare provider, allowing the healthcare provider to see if their patients are properly taking the medication and observe and analyze real-time data regarding the patient's overall health.  Digital Medicines also enable care teams to manage larger patient populations and make medical decisions without the need for a patient to physically travel to the doctor's office, which has become particularly beneficial in light of challenges posed by the COVID-19 pandemic and resulting social distancing measures.

8.     Since its founding, the Debtor has pursued its vision to revolutionize and improve the healthcare industry through creating and establishing the clinical, regulatory and commercial standards, infrastructure, pathways, evidence, and advocacy to make drug therapy based on Digital Medicines the standard of care.  The Debtor currently holds approximately 400 patents and has a panel of more than 20 Digital Medicines to treat cardiovascular and metabolic

ACTIVE/103662746.4

diseases including hypertension and diabetes that have been prescribed to patients in the United States.

9.     The Debtor's business remains almost entirely in the "pre-revenue" stage of development.  Since inception, the Debtor has relied primarily on equity capital and advances under its agreements with Otsuka Pharmaceutical Co., Ltd. ("Otsuka"), the primary licensee of a significant portion of the Debtor's intellectual property, to finance its operations.

10.     Prior to the Petition Date, facing mounting liquidity constraints, the Debtor and its advisors commenced a robust marketing process to secure additional funding or bids for a sale of the Debtor's business.  Despite having several promising opportunities, the onset of the COVID-19 pandemic created significant uncertainty in the capital markets and frustrated the Debtor's efforts.  However, the Debtor has had fruitful discussions with Otsuka and other interested parties regarding a potential sale transaction.  The Debtor has commenced this Chapter 11 Case in order to preserve the Debtor's assets and conduct a sale process or other transaction, all in an effort to maintain continuity of business operations and maximize value for the benefit of the Debtor's creditors and equity stakeholders.  The Debtor has negotiated with its Prepetition Lender for the consensual use of cash collateral and anticipates that it will seek approval of bidding and sale procedures in the early weeks of the Chapter 11 Case.

11.     A detailed description of the Debtor, including its business operations, its corporate and capital structure, the events leading to the commencement of the Chapter 11 Case, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

## FACTS RELEVANT TO THIS MOTION

12.     The Debtor is a borrower under that certain Credit Agreement, dated as of May 8, 2015 (as amended, supplemented, or otherwise modified, the "Prepetition Credit Agreement") by and among the Debtor and OrbiMed Royalty Opportunities II, LP, as lender (the "Prepetition Lender") pursuant to which OrbiMed provided term loans (collectively, the "Prepetition Loan") to the Debtor in aggregate principal amount of $50,000,000.

13.     Interest on the Prepetition Loan accrues at the non-default rate of 15% per annum payable in cash.[3]  Commencing upon the Termination Date (as defined in the Prepetition Credit Agreement, as amended),[4] interest will accrue at a rate of 19% per annum payable in cash.[5]  The Prepetition Loan originally matured on May 8, 2021, but is now due and payable in full on or before August 15, 2020.[6]

14.     As of the Petition Date, the aggregate principal amount, plus accrued interest, owing by the Debtor to the Prepetition Lender under the Prepetition Credit Agreement is approximately $9,502,842.51.

15.     Pursuant to that certain Pledge and Security agreement dated as of May 8, 2015 (the "Prepetition Security Agreement"), the Prepetition Loan is secured by a first priority lien on the "Collateral" (as defined in the Prepetition Security Agreement) (the "Prepetition Collateral"), which is comprised of substantially all of the Debtor's assets, except

---

[3]     Amended pursuant to that certain Second Limited Forbearance Agreement dated and effective as of December 30, 2019 (the "Second Forbearance Agreement").
[4]     Termination Date is defined in the Second Forbearance Agreement as "the earlier to occur of: (a) 11:59 p.m. Eastern time, on July 15, 2020; and (b) the date on which any Forbearance Default . . . occurs."
[5]     Amended pursuant to that certain Limited Forbearance Agreement dated as of December 4, 2019 and made effective as of September 30, 2019.
[6]     Amended pursuant to that certain First Amendment to Second Limited Forbearance Agreement dated as of May 28, 2020.

ACTIVE/103662746.4

for certain assets specifically identified in the Prepetition Security Agreement.  The Prepetition

Security Agreement specifically excludes the Debtor's Intellectual Property (as defined in the

Prepetition Security Agreement) from the Prepetition Collateral, but "all Proceeds and all

Accounts of all Intellectual Property"[7] are included.   However, the Prepetition Security

Agreement provides that to the extent a judicial authority (including a bankruptcy court) "would

hold that a security interest in the underlying Intellectual Property is necessary to have a security

interest in such Accounts and such property that are Proceeds of any Intellectual Property, then

the Collateral shall automatically . . . include the Intellectual Property to the extent necessary to

permit perfection of the Lender's security interest in such Accounts and such other property of

the Borrower that are proceeds of the Intellectual Property."

16.    As of the Petition Date, the Debtor is holding cash of approximately

$7,316,000.  *See* 13-week budget (the "Budget"), a copy of which is attached to the Interim

Order as **Exhibit A**.  The Prepetition Lender asserts a security interest over all of this cash and

over all of the Debtor's projected postpetition receipts.

### RELIEF REQUESTED

17.    By this Motion, the Debtor seeks entry of the Cash Collateral Orders:

(i) authorizing the Debtor's use of cash collateral (the "Cash Collateral") and all other Prepetition

Collateral, subject to the terms and conditions set forth therein; (ii) granting certain adequate

protection to the Prepetition Lender; (iii) subject to entry of a Final Order and to the extent set

forth herein, waiving the Debtor's right to surcharge the Prepetition Collateral pursuant to

---

[7]    Pursuant to the Prepetition Security Agreement, the terms "Proceeds" and "Accounts" have the meanings set forth in the Uniform Commercial Code.

section 506(c) of the Bankruptcy Code, any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and a waiver of any marshaling obligations; (iv) vacating or modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to permit the Debtor and the Prepetition Lender to implement and effectuate the terms and provisions of the Interim Order; and (v) scheduling the Final Hearing within thirty (30) days after entry of the Interim Order to consider the relief requested in the Motion on a final basis and the entry of a Final Order.

### THE DEBTOR'S IMMEDIATE NEED TO USE CASH COLLATERAL

18.     The ability of the Debtor to finance its operations and complete a successful chapter 11 sale process or other value-maximizing transaction requires immediate continued use of Cash Collateral and the other Prepetition Collateral.  In the absence of the use of Cash Collateral and the other Prepetition Collateral, the continued operation of the Debtor's business would not be possible and there would occur immediate and irreparable harm to the Debtor, its estate and its creditors. The Debtor does not have sufficient available sources of working capital and financing to operate its business in the ordinary course without the use of Cash Collateral. The relief requested in this Motion therefore is necessary for the continued operation of the Debtor's business and the preservation of its property, and thus is in the best interests of the Debtor, its estate and its creditors.

19.     The Prepetition Lender and the Debtor have negotiated at arm's-length and in good faith regarding the Debtor's use of Cash Collateral to fund the continued operation of the Debtor's business during the period from the Petition Date through the earlier of

7

(a) July 31, 2020, if the Final Order has not been entered by the Court prior to such date; and

(b) the Termination Date (i.e., the earliest to occur of the Outside Date, or other triggering event as described in the Interim Order).  The Prepetition Lender has agreed to the Debtor's proposed use of Prepetition Collateral, including Cash Collateral, on the terms and conditions set forth in the Interim Order, and the terms of the adequate protection provided for therein.  Subject to the terms set forth in the Interim Order, the Debtor will use Cash Collateral in accordance with the Budget, which sets forth the Debtor's projected receipts and disbursements, on a cash basis, for the period beginning on the Petition Date.

20.     As further set forth herein, the Interim Order provides adequate protection to the Prepetition Lender in the form of, among other things, adequate protection liens and superpriority claims to protect the Prepetition Lender against any diminution occurring from and after the Petition Date in value arising from, among other things, the Debtor's use, lease, consumption or disposition of the Prepetition Collateral as of the Petition Date, including Cash Collateral, the acquiescence of the Prepetition Lender in the Carve-Out, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

21.     Access to existing Cash Collateral on an interim basis will provide the Debtor with the liquidity necessary to continue to operate its business and thus preserve and maintain the going concern value of the its estate, thereby facilitating a successful chapter 11 sale process or other value-maximizing transaction. Without access to such liquidity, the Debtor's ability to navigate through chapter 11 would be jeopardized, to the detriment of the Prepetition Lender and all of the Debtor's other stakeholders.  As a result, the Debtor has an immediate need

ACTIVE/103662746.4

to use Cash Collateral to ensure access to sufficient working capital to administer this Chapter 11 Case.

## STATEMENT OF THE MATERIAL TERMS OF THE INTERIM ORDER

22.    Pursuant to Bankruptcy Rule 4001(b) and (d) and Local Rule 4001-2(a)(i) and (ii), the following is a concise statement and summary[8] of the material terms of the Interim Order (collectively, the "Highlighted Provisions"):

| Material Terms | Summary | Para(s). of Interim Order |
|---|---|---|
| **Entities with an Interim in Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(i)* | OrbiMed Royalty Opportunities II, LP | Intro ¶ (b) |
| **Purpose for Use of Cash Collateral**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(ii)* | The Debtor seeks authority to use Cash Collateral to satisfy payroll obligations and other working capital and general corporate purposes of the Debtor consistent with the terms set forth in the Interim Order and the Approved Budget (as defined below). | ¶¶ G, 2. |
| **Budget and Variance Reporting**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(ii)* | Approved Budget.  The Debtor has delivered to the Prepetition Lender a 13-week budget that has been approved by the Prepetition Lender (the "Approved Budget") for the time period commencing with the Petition Date.  A copy of the Approved Budget is attached to the Interim Order as Exhibit A.  Every week following entry of the Interim Order, on the third business day of the first week following the Petition Date, the Debtor will provide the Prepetition Lender with an updated budget for the following 13-week period. Each updated budget shall be in form and substance acceptable to the Prepetition Lender and shall not be deemed to constitute the "Approved Budget" for purposes of the Interim Order until the | ¶¶ 2(b),(c) |

---

[8]       The summaries and descriptions of the terms and conditions for the Debtor's use of Cash Collateral and the provisions of the proposed Interim Order described in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summaries and descriptions are qualified in their entirety by proposed Interim Order.  In the event there is any conflict between this Motion and the Interim Order or Final Order (as applicable), the Interim Order or Final Order (as applicable) will control in all respects.

ACTIVE/103662746.4

| | Prepetition Lender's approval of such updated budget has been confirmed in writing by counsel to the Prepetition Lender. The Debtor will provide to the Prepetition Lender financial reporting with respect to the Debtor as provided in the Interim Order. Cash Collateral used under the Interim Order shall be used by the Debtor only in accordance with the Approved Budget and the Interim Order. The consent of the Prepetition Lender to the Approved Budget will not be construed as a commitment to permit the use of Cash Collateral after the occurrence of the Termination Date, regardless of whether the aggregate funds shown on the Approved Budget have been expended; provided that the Prepetition Collateral may be utilized for the Carve-Out as, and to the limited extent, expressly provided by paragraph 6 of the Interim Order.<br><br>By not later than four (4) business days after the end of the week following the Petition Date, the Debtor shall deliver to the Prepetition Lender a variance report in form and substance acceptable to the Prepetition Lender in its sole and absolute discretion (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Thereafter, the Debtor shall deliver to the Prepetition Lender, by not later than four (4) business days after the close of each weekly period after the Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks have elapsed since the Petition Date, then for the trailing one-, two-, or three-week period, as applicable). Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the "Permitted Variances," which means, in each case measured on a cumulative basis, (x) up to 10% for cash disbursements measured weekly on a line-item basis, or (y) up to 10% in the aggregate for all cash disbursements ("Permitted Variances"); provided, however, that for purposes of calculating variances, cash disbursements shall not include disbursements made by the Debtor in payment of professional fees and expenses related to administration of the Chapter 11 Case. | |
| **Duration of Use of Cash Collateral/Events of Default/Rights and Remedies Upon Event of Default**<br><br>*Bankruptcy Rule 4001(b) (1)(B)(iii)*<br><br>*Local Rule 4001-2(a)(ii)* | Pursuant to the Interim Order, the Debtor's authorization to use Cash Collateral will expire without further notice or hearing on the earlier of (a) July 31, 2020, if the Final Order has not been entered by the Court prior to such date; and (b) the Termination Date (as defined below).<br><br>Termination. The Debtor's right, and the right of any other representative of the Estate, to use Cash Collateral under the Interim Order shall terminate (other than in respect of the Carve-Out as, and to the limited extent, expressly provided in paragraph 7 of the Interim Order), automatically and without the need for notice or demand by the Prepetition Lender or any further order of the Court, on the earliest to occur of the following: (a) September 11, 2020 (the "Outside Date"); (b) thirty-five (35) calendar days after the Petition Date if the Final Order has not been | ¶¶ 1, 10, 11 |

entered by such date; (c) the closing date of any sale (i) of the Debtor's business, or (ii) any material portion of the Debtor's intellectual property, or (iii) of substantially all of the assets of the Estate; (d) the appointment of a chapter 11 trustee or of an examiner with expanded powers in the Chapter 11 Case (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code); (e) the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; (f) the dismissal of the Chapter 11 Case; (g) (i) any material violation or breach (other than by the Prepetition Lender), of any of the provisions of the Interim Order, or (ii) the occurrence of any of the events described in paragraph 24 of the Interim Order; (h) any other (i.e. not material) violation or breach by the Debtor of any of the provisions of the Interim Order that is not cured within five (5) business days of written notice from the Prepetition Lender (either (g)(i), (g)(ii), or (h), an "Event of Default"); (i) July 15, 2020 if the Debtor has not received at least $3,200,000 from Otsuka Pharmaceutical Co., Ltd., and (j) the effective date of any plan of reorganization in the Chapter 11 Case that has been confirmed by an order of the Court. The date on which the earliest of clauses (a) through (j) occurs is referred to as the "Termination Date."

Remedies and Stay Modification.
The automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed modified, without the need for further order of the Court, to permit the Prepetition Lender upon, or at any time after, the occurrence of any Termination Date (including, without limitation, as a result of the occurrence of any Event of Default under the Interim Order) to deliver written notice by electronic mail to counsel for the Debtor, counsel for any Creditors' Committee, counsel for any trustee, and counsel for the U.S. Trustee, stating that the Prepetition Lender elects to commence the exercise of rights and remedies in respect of the Interim Order and the Prepetition Loan Documents, and under applicable bankruptcy and non-bankruptcy law, including, without limitation, in respect of its Prepetition Collateral and its Replacement Liens (a "Remedies Notice").

Subject to paragraph 11(c) of the Interim Order, following the fifth (5th) business day following the delivery by the Prepetition Lender of a Remedies Notice (the "Remedies Notice Period"), the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed modified, without the need for further order of the Court, to permit the Prepetition Lender to exercise all rights and remedies provided for in the Interim Order or in the Prepetition Loan Documents or under applicable bankruptcy or non-bankruptcy law, including, without limitation, the rights to (in all instances subject to the Carve-Out) (i) take any actions reasonably calculated to preserve or safeguard the assets and property subject to the Prepetition Liens and/or Replacement Liens and/or to prepare

ACTIVE/103662746.4

|  |  |  |
|---|---|---|
|  | any or all such assets and property for sale; (ii) foreclose or otherwise enforce the Prepetition Liens and the Replacement Liens; (iii) exercise collection rights in respect of the Prepetition Liens and the Replacement Liens, including, without limitation, in respect of deposit accounts, securities accounts, accounts receivable, payment intangibles, licenses, instruments, and/or any other rights to payment, proceeds, and Cash Collateral, and sweep Cash Collateral as provided in the Prepetition Loan Documents or under applicable law; and (iv) exercise any other rights and remedies under the Interim Order, the Prepetition Loan Documents, applicable bankruptcy law, and/or applicable non-bankruptcy law.<br><br>Prior to the expiration of any Remedies Notice Period pursuant to paragraph 11(b) of the Interim Order, the Debtor, any Creditors' Committee, any trustee, and/or the U.S. Trustee may seek an order from this Court to continue in effect the automatic stay of section 362(a) of the Bankruptcy Code and/or to obtain any other injunctive relief, and shall have the burden of proof at any hearing on any such request to establish good cause for the requested relief based on circumstances that could not reasonably have been anticipated at the time of entry of the Interim Order. During the pendency of any such request (i) the Remedies Notice Period shall be deemed to continue (and shall not expire), and (ii) it shall be deemed that neither an Event of Default nor the Termination Date has occurred.  Following the expiration of any Remedies Notice Period, no such relief shall be sought or granted.<br><br>Subject to paragraph 11(c) of the Interim Order, following the expiration of the Remedies Notice Period, the Debtor (or any trustee in the Chapter 11 Case or in a Successor Case) shall cooperate with the Prepetition Lender in connection with its exercise of rights and remedies by, among other things (in all instances subject to the Carve-Out), (i) providing at all reasonable times access to the Debtor's premises to the Prepetition Lender and its representatives and agents (including, without limitation, any collateral liquidator or consultant), (ii) providing at all reasonable times access to the Debtor's books and records to the Prepetition Lender and its representatives and agents, (iii) providing any information or documents reasonably requested by the Prepetition Lender or its representatives or agents, (iii) performing the other obligations of the Debtor in connection with the Prepetition Lender's exercise of rights and remedies as required by the Prepetition Loan Documents, and (iv) taking reasonable steps to safeguard and protect the assets and property subject to the Prepetition Liens and/or Replacement Liens, and (v) refraining from any interference with (and from any encouragement of others to interfere with) the Prepetition Lender's enforcement of its rights and remedies. |  |
| **Proposed** | <u>Adequate Protection for Prepetition Lender</u>.    As   adequate | ¶ 3(a)-(c) |

| | | |
|---|---|---|
| **Adequate Protection**<br><br>*Bankruptcy Rule 400l(b)(1)(B)(iv)*<br><br>*Local Rule 4001-2(a)(ii)* | protection against, and limited to the extent of, any Diminution in Value, the Prepetition Lender will be granted the following ((a) through (e) below shall be referred to collectively as the "<u>Adequate Protection Rights</u>"):<br><br>(a) <u>Replacement Liens</u>. To secure the Adequate Protection Claim (as defined below), and pursuant to sections 361(2) and 363(2) of the Bankruptcy Code, the Prepetition Lender is hereby granted valid, binding, continuing, enforceable, fully-perfected, and non-voidable postpetition security interests in and liens on, subject only to the Carve-Out (collectively, the "<u>Replacement Liens</u>") as follows:<br><br>     (1) *First Priority Replacement Lien on Unencumbered Property*. Replacement Lien on all of the Debtor's and the Estate's right, title, and interest in and to all tangible and intangible assets and property, including, without limitation, all prepetition and postpetition assets and property of the Debtor or of the Estate, and all products and proceeds thereof, and proceeds of proceeds, in each case whether existing on or as of the Petition Date or thereafter acquired, and in each case that are not subject to any (x) valid, binding, enforceable, duly perfected, and non-avoidable liens in existence on or as of the Petition Date or (y) valid, binding, enforceable, and non-avoidable liens in existence as of the Petition Date that are duly perfected after the Petition Date as and to the extent permitted by section 546(b) of the Bankruptcy Code (collectively, the "<u>Unencumbered Property</u>"), including, without limitation, all accounts, receivables, rights to payment, cash, general intangibles, payment intangibles, instruments, contracts, securities, investment property, chattel paper, owned real estate, real property leaseholds, goods, inventory, fixtures, machinery, equipment, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements (either as licensor or as licensee), intellectual property of any kind, claims and causes of action (including, without limitation, those arising under section 549 of the Bankruptcy Code), commercial tort claims, the proceeds of all of the foregoing, and proceeds of such proceeds; *provided* that the Unencumbered Property shall not include the Avoidance Actions, but subject to the entry of the Final Order, the Unencumbered Property shall include, without limitation, and the Replacement Liens shall attach to, any and all payments, judgments, settlements, property, and proceeds | |

ACTIVE/103662746.4

avoided or recovered on account of, or in respect of, any and all Avoidance Actions; *provided, further*, that the collateral under this clause 3(a)(1) shall not include any contract, license, or lease (other than Prepetition Collateral or Cash Collateral) upon which, and solely to the extent that, the grant of a Replacement Lien as contemplated in the Interim Order would constitute a default or event of default under such contract, license, or lease (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable non-bankruptcy law), but the collateral under this clause 4(a)(1) shall in any event include, without limitation, all collections on account of, or proceeds in respect of, any such contract, license, or lease.

(2) *Replacement Liens Junior to Certain Senior Existing Liens*. Replacement Liens on all of the Debtor's and the Estate's right, title, and interest in and to tangible and intangible assets and property (*other than* the property described in clause (1) or clause (3) of this paragraph 4(a)), including, without limitation, all prepetition and postpetition assets and property of the Debtor or of the estate, and all products and proceeds thereof, and proceeds of proceeds, in each case whether existing on or as of the Petition date or thereafter acquired, and in each case that are subject to any (x) valid, binding, enforceable, duly perfected, and non-avoidable liens in existence on or as of the Petition Date in favor of a creditor other than the Prepetition Lender or (y) valid, binding, enforceable, and non-avoidable liens in favor of a creditor other than the Prepetition Lender in existence as of the Petition Date that are duly perfected after the Petition Date as and to the extent permitted by section 546(b) of the Bankruptcy Code (the liens in clauses (x) and (y) above, collectively, but only to the extent senior in priority to the Prepetition Liens of the Prepetition Lender, the "<u>Senior Existing Liens</u>"), including, without limitation, all accounts, receivables, rights to payment, cash, general intangibles, payment intangibles, instruments, contracts, securities, investment property, chattel paper, owned real estate, real property leaseholds, goods, inventory, fixtures, machinery, equipment, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements (either as licensor or as licensee), intellectual property of any kind, claims and causes

14

of action (excluding Avoidance Actions), commercial tort claims, the proceeds of all of the foregoing, and proceeds of such proceeds; *provided* that such Replacement Liens in favor of the Prepetition Lender shall be junior in priority solely to the extent that the Senior Existing Liens were, as of the Petition Date, senior in priority to the Prepetition Liens in favor of the Prepetition Lender; *provided, further*, that the collateral under this clause 3(a)(2) shall not include any contract, license, or lease (other than Prepetition Collateral or Cash Collateral) upon which, and solely to the extent that, the grant of a Replacement Lien as contemplated in the Interim Order, would constitute a default or event of default under such contract, license, or lease (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable non-bankruptcy law), but the collateral under this clause 3(a)(2) shall in any event include, without limitation, all collections on account of, or proceeds in respect of, any such contract, license, or lease.

(3)    *Replacement Liens Senior to Certain Existing Liens of Prepetition Lender*. Replacement Liens on, and security interests in, all of the Debtor's and the Estate's right, title, and interest in and to all tangible and intangible assets and property, including, without limitation, all prepetition and postpetition assets and property of the Debtor or of the Estate, and all products and proceeds thereof, and proceeds of proceeds, in each case whether existing on or as of the Petition Date or thereafter acquired, including, without limitation, all accounts, receivables, rights to payment, cash, general intangibles, payment intangibles, instruments, contracts, securities, investment property, chattel paper, owned real estate, real property leaseholds, goods, inventory, fixtures, machinery, equipment, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements (either as licensor or as licensee), intellectual property of any kind, claims and causes of action (excluding Avoidance Actions), commercial tort claims, the proceeds of all of the foregoing, and proceeds of such proceeds; *provided* that such liens and security interests shall not prime any Existing Senior Liens senior in priority to the Prepetition Liens of the Prepetition Lender; *provided, further*, that the collateral under this

15

clause 3(a)(3) shall not include any contract, license, or lease (other than Prepetition Collateral or Cash Collateral) upon which, and solely to the extent that, the grant of a Replacement Lien as contemplated in the Interim Order, would constitute a default or event of default under such contract, license, or lease (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable non-bankruptcy law), but the collateral under this clause 3(a)(3) shall in any event include, without limitation, all collections on account of, or proceeds in respect of, any such contract, license, or lease.

(4)     *Status of Replacement Liens*.  The Replacement Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Estate under section 551 of the Bankruptcy Code or (B) any lien or security interest arising after the Petition Date, subject to the Carve Out; or (ii) except as otherwise explicitly set forth in clause (1), clause (2), or clause (3) of this paragraph 3(a), subordinated to, or made *pari passu* with, any other lien or security interest, now or hereafter existing and whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise.

The Replacement Liens shall be deemed fully perfected liens and security interests, effective and perfected upon the date of the Interim Order, with the priorities set forth in the Interim Order, without the necessity of the execution, recordation, or filing of any mortgages, security agreements, pledge agreements, financing agreements, financing statements, filings in the U.S. Patent and Trademark Office or the U.S. Copyright Office or any foreign office, or any other agreements, instruments, documents, notices, recordations, or filings, domestic or foreign, such that no additional actions need be taken by the Prepetition Lender, by the Debtor, or by any other person or entity to grant or perfect such interests or to effect the priorities set forth in the Interim Order.

(b) <u>Adequate Protection Superpriority Claim</u>.  As further adequate protection against, and limited to the extent of, any Diminution in Value, the Prepetition Lender is hereby granted a superpriority claim, which claim shall have priority over all administrative expense claims and all other unsecured claims against the Debtor or the Estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to section 105, section 326, section 328, section 330, section 331,

ACTIVE/103662746.4

section 503(a), section 503(b), section 506(c), section 507(a), section 507(b), section 546(c), section 552(b), section 726, section 1113 or section 1114, or pursuant to any other provision of the Bankruptcy Code (the "Adequate Protection Claim"), *provided*, *however*, that the Adequate Protection Claim shall be subject and subordinate only to the Carve-Out.

(c) Payment of Reasonable Postpetition Professional Fees and Expenses of Prepetition Lender.  As further adequate protection, and subject to the terms set forth in this paragraph, all reasonable and documented postpetition professional fees and expenses reimbursable under the Prepetition Loan Documents incurred or to be incurred by the Prepetition Lender shall be paid by the Debtor to the Prepetition Lender (collectively, the "Lender Professional Fees").  Subject to the terms set forth in this paragraph, the Debtor is authorized and directed to pay all such Lender Professional Fees in accordance with the terms of the Prepetition Loan Documents, without the need for filing any further fee application, pleading, notice, or document with the Court for approval or payment of such Lender Professional Fees.  Such Lender Professional Fees shall include, without limitation, all reasonable and documented fees, expenses, and disbursements of outside counsel (including, without limitation, a local counsel firm), a financial advisor, and any experts in connection with this Chapter 11 Case and any Successor Case (as defined below), including, without limitation, relating to (a) the preparation, negotiation, implementation, and enforcement of the Interim Order and the Final Order; (b) any amendment or waiver of any provision of the Prepetition Loan Documents, the Interim Order, or the Final Order; (c) the enforcement or protection of any of the Prepetition Lender's rights and remedies under the Prepetition Loan Documents, the Interim Order, and the Final Order; (d) the administration of this Chapter 11 Case and any Successor Case, and any proceedings arising in or related thereto; and (e) the negotiation, formulation, drafting, proposal, and implementation of a plan of reorganization or liquidation or a sale under section 363.  The Lender Professional Fees shall be paid within ten (10) days (which time period may be extended by written agreement of the applicable professional) after the receipt by the Debtors, the Creditors' Committee, and the U.S. Trustee (the "Review Period") of invoices therefor (the "Invoiced Fees").  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably and sufficiently detailed description of services provided and the expenses incurred by the applicable professional to permit a review for reasonableness; *provided*, *however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail.  The Debtor, the Creditors' Committee, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "Disputed Invoiced Fees") within the Review Period by filing with the Court a motion or other

ACTIVE/103662746.4

| | | |
|---|---|---|
| | pleading, on at least ten (10) days' prior written notice to the Prepetition Lender and the applicable professional of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading. | |
| | (d) <u>Consent to Use of Cash Collateral Subject to Adequate Protection Rights</u>.  The Prepetition Lender consents to the use of Cash Collateral to the extent set forth in the Interim Order and the Approved Budget; *provided, however*, that (i) such consent is expressly conditioned upon the provision of the Adequate Protection Rights and the entry of the Interim Order (in form and content satisfactory to the Prepetition Lender in its sole discretion), (ii) such consent shall not be deemed a basis to deny, impair, or alter the Prepetition Lender's entitlement to the Adequate Protection Rights, and (iii) such consent shall be of no force or effect in the event that this Interim Order is not entered or is vacated or is modified in any respect without the express written consent of the Prepetition Lender in its sole discretion. | |
| | (e) <u>Further Adequate Protection</u>.  Nothing in the Interim Order shall, or shall be deemed to, limit, abridge, or otherwise affect the rights of (i) the Prepetition Lender to request at any time that the Court order the provision of additional or further adequate protection of its interests in the Prepetition Collateral (including, without limitation, the Cash Collateral) as may be appropriate in the event that the Adequate Protection Rights provided herein may be inadequate, and (ii) the Debtor or any other party in interest to object to any such request. | |
| **Liens on Chapter 5 Actions**  *Local Rule 4001-2(a)(i)(D)* | None immediately provided in Interim Order. Subject to entry of the Final Order, the Replacement Liens will attach to any and all payments, judgments, settlements, property, and proceeds avoided or recovered on account of, or in respect of, any and all avoidance actions or other actions arising under chapter 5 of the Bankruptcy Code. | ¶ 3(a) |
| **Carve Out**  *Local Rule 4001-2(a)(i)(F)* | <u>Carve-Out</u>. Only if, and to the limited extent that, sufficient unencumbered funds are not available in the Estate at the time that a payment of any of the administrative priority expenses specified below in clause (i), clause (ii), clause (iii), or clause (iv) is otherwise due, the Replacement Liens, the Adequate Protection Claim, and the Prepetition Liens shall be subject only to, and proceeds of any collateral therefor may be used to pay only: (i) unpaid fees and expenses required to be paid by the Debtor to the Clerk of the Court or to the Office of the United States Trustee under 28 U.S.C. | ¶ 6 |

ACTIVE/103662746.4

| | | |
|---|---|---|
| | § 1930(a)(6); (ii) reasonable fees and expenses incurred by a trustee in any Successor Case under section 726(b) of the Bankruptcy Code in an aggregate cumulative amount not to exceed $25,000; (iii) to the extent allowed by the Court at any time, but limited in any event to the respective aggregate cumulative amount for each professional (including, without limitation, any noticing agent) set forth in the Approved Budget (and only if the retention or employment of such professional (including, without limitation, any noticing agent) has been approved pursuant to a final order of the Court), accrued and unpaid (net of any prepetition retainers) reasonable fees, disbursements, costs, and expenses incurred by any professional for the Debtor (collectively, the "Debtor's Professionals Fees") or for a Creditors' Committee (collectively, the "Committee's Professionals Fees" and together with the Debtor's Professionals Fees, the "Estate Professional Fees") at any time before or on the first business day following delivery by the Prepetition Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after the date of a Carve-Out Trigger Notice; and (iv) to the extent allowed at any time, Debtor's Professional Fees incurred after the first business day following delivery by the Prepetition Lender of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $100,000; (v) to the extent allowed at any time, Committee's Professional Fees incurred after the first business day following delivery by the Prepetition Lender of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $25,000 (the amounts set forth in the foregoing clauses (i)-(vi) being the "Carve-Out Cap").    For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the Prepetition Lender (which delivery shall be made via electronic mail) to the Debtor's counsel, the United States Trustee, and counsel to any Creditors' Committee, which notice may be delivered at any time either (1) following the occurrence of the Termination Date, or (2) following the occurrence of an Event of Default (as defined below), stating that the Carve-Out Cap has been invoked. | |
| **Cross Collateralization**<br><br>*Local Rule 4001-2(a)(i)(A)* | None, other than Replacement Liens as adequate protection. | |
| **Findings Regarding Validity/Perfection/Amount**<br><br>*Local Rule 4001-2(a)(i)(B)* | As set forth in the Interim Order, the Debtor has acknowledged and agreed as set forth therein, to the validity, perfection, priority, amount and enforceability of the Prepetition Obligations, without prejudice to any other party's rights to assert claims, counterclaims or causes of actions, objections, contests or defenses prior to the expiration of the Challenge Period (as defined below). | ¶ D |
| **Challenge Period**<br><br>*Local Rule 4001-2(a)(i)(B)* | <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.<br><br>The Debtor's acknowledgements and stipulations set forth in | ¶ 8 |

19

paragraph D of the Interim Order and the releases set forth in paragraph 9 of the Interim Order (collectively, the "Debtor's Stipulations") are final and binding upon the Debtor in all circumstances upon entry of the Interim Order.  The Debtor's Stipulations shall be binding upon each other party in interest, including, without limitation, a Creditors' Committee, unless a Challenge (defined below) is commenced by a Creditors' Committee within the Challenge Period and a final, non-appealable order is entered sustaining any such Challenge.

"Challenge" and "Challenges" shall mean individually or collectively:   (i) an adversary proceeding or contested matter against the Prepetition Lender challenging the admissions, stipulations, findings, or releases included in the Debtor's Stipulations, or (ii) an adversary proceeding or contested matter against the Prepetition Lender in connection with or related to (A) the Prepetition Credit Facility; (B) the prepetition business relationship between the Prepetition Lender and the Debtor, or the prepetition conduct of the Prepetition Lender with respect to the Debtor; (C) alleged prepetition actions or inactions of the Prepetition Lender arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the Prepetition Lender in the nature of an "equitable subordination," "lender liability," "deepening insolvency," or "control person" liability; (D) any avoidance, offset, recoupment, counterclaim, or defense to the Prepetition Obligations (including, without limitation, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), or (E) any avoidance of or challenge (whether pursuant to chapter 5 of the Bankruptcy Code or otherwise) to any transfer made by or on behalf of the Debtor to or for the benefit of the Prepetition Lender.

Subject to paragraph 8(f) of the Interim Order, unless otherwise agreed in writing by the Prepetition Lender, any Challenge under this paragraph must be commenced by a party in interest with standing and requisite authority to bring the Challenge by no *later* than (i) (x) for a Creditors' Committee (if appointed), the sixtieth (60th) calendar day following the formation of the Creditors' Committee, or (y) for all other parties (other than the Debtor) the seventy-fifth (75th) calendar day following the date of entry of the Interim Order, and (ii) any such other or later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in the foregoing clauses (i)(x) or (i)(y) of this paragraph (the time period established by the foregoing clauses (i) and (ii), the "Challenge Period").

| | | |
|---|---|---|
| **506(c) Waiver**<br><br>*Local Rule 4001-2(a)(i)(C)* | Subject to the entry of the Final Order, no costs or expenses of administration that have been or may be incurred in this Chapter 11 Case or in any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or | ¶¶ H, 12 |

| | | |
|---|---|---|
| | expenses of administration against, the Prepetition Lender or any of its claims, the Carve-Out, or any assets or property subject to the Prepetition Liens and/or Replacement Liens, pursuant to section 506(c) or section 105 of the Bankruptcy Code or otherwise. Subject to the entry of the Final Order, no action, inaction, or acquiescence by the Prepetition Lender shall be deemed to be, or shall be considered evidence of, any alleged consent to a surcharge against the Prepetition Lender, any of its claims, the Carve-Out, or any assets or property subject to the Prepetition Liens and/or Replacement Liens. | |
| **552(b) Wavier**<br><br>*Local Rule 4001-2(a)(i)(H)* | Subject to the entry of the Final Order, the Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition Lender with respect to any proceeds, product, offspring, or profits of any of the Collateral, or otherwise. | ¶¶ H, 14 |
| **Releases**<br><br>*Local Rule 4001-2(a)(ii)* | The releases, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph shall be deemed effective immediately upon entry of the Interim Order and subject only to the Challenge rights set forth in paragraph 8 of the Interim Order. The Debtor forever and irrevocably (i) releases, discharges, and acquits the Prepetition Lender, and its former or current officers, employees, directors, affiliates, partners, agents, representatives, owners, members, partners, financial advisors, legal advisors, managers, consultants, accountants, attorneys, and predecessors in interest (collectively, the "<u>Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, Avoidance Actions, indebtedness, obligations, counterclaims, cross-claims, offsets, recoupments, subordinations, recharacterizations, defenses, recoveries, and Challenges, of every type, relating to any aspect of the relationship between the Prepetition Lender or its affiliates, on the one hand, and the Debtor or its affiliates, on the other hand, arising out of or in any way relating to the Prepetition Credit Facility, the Prepetition Obligations, the Debtor's attempts to restructure the Prepetition Obligations, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, enforceability, priority, perfection, or avoidability of the liens or secured claims of the Prepetition Lender, including, without limitation, any equitable subordination claims or defenses; and (ii) waives any and all defenses (including, without limitation, offsets, recoupments, counterclaims, and cross-claims of any nature or kind) as to the validity, enforceability, priority, perfection, or avoidability of the Prepetition Obligations and the Prepetition Liens. | ¶ 9 |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt**<br><br>*Local Rule 4001-2(a)(i)(E)* | None. | |
| **Non-Consensual Priming** | None. | |

ACTIVE/103662746.4

| *Local Rule 4001-2(a)(i)(G)* | | |
| --- | --- | --- |

## BASIS FOR RELIEF REQUESTED

### I.    The Debtor's Use of Cash Collateral and Proposed Adequate Protection are Appropriate and Should be Authorized

23.    The Debtor's use of property of its estate, including Cash Collateral, is governed by section 363 of the Bankruptcy Code.[9] Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

24.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral. 11 U.S.C. § 363(e). Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re*

---

[9]    The Bankruptcy Code defines "cash collateral" as follows:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

ACTIVE/103662746.4

*Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012*)*; *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . .") (citation and quotation omitted).

25.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A.     The Proposed Adequate Protection for the Prepetition Lender is Sufficient

26.     As set forth in the Interim Order and described above in the Highlighted Provisions, the Debtor proposes to provide the Prepetition Lender with various forms of Adequate Protection.  The Debtor respectfully submits that, in light of the circumstances of the Chapter 11 Case, the proposed Adequate Protection is appropriate and sufficient to protect the Prepetition Lender from any Diminution in Value (as defined in the Interim Order). In particular, the Cash Collateral will be used to sustain the Debtor's business operations, run a sale process and administer this Chapter 11 Case, which will allow the Debtor to maximize value of its estate. If the Debtor is unable to use Cash Collateral, the Debtor will be unable to fund payroll obligations, procure goods and services from vendors or administer this Chapter 11 Case,

ACTIVE/103662746.4

thereby dissipating value to the detriment of the Prepetition Lender and other stakeholders. The use of the Cash Collateral will therefore protect the Prepetition Lender's security interests by preserving the value of its collateral. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs., 135 B.R. 753*, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor); *In re Constable Plaza Assocs.*, L.P., 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage").

27.     In light of the foregoing, the Debtor submits that the proposed Adequate Protection to be provided for the benefit of the Prepetition Lender is appropriate. Thus, the Debtor's proposed Adequate Protection not only is necessary to protect the Prepetition Lender against any Diminution in Value, but also is fair and appropriate on an interim basis under the circumstances of this Chapter 11 Case to ensure the Debtor is able to continue using the Cash Collateral in the near term, for the benefit of its estate and all parties in interest.

## II.     Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm

28.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Fed. R. Bankr. P. 4001(b)(2).

However, the Court is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtor's proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtor's estate. *Id.*

29.     The Debtor has an immediate postpetition need to use Cash Collateral. The Debtor cannot maintain the value of its estate during the pendency of the Chapter 11 Case without access to cash. The Debtor will use cash to, among other things, continue operating its business and satisfy other working capital needs during the Chapter 11 Case. The Debtor believes that substantially all of its available cash constitutes Cash Collateral, as that term is used by section 363(c) of the Bankruptcy Code. The Debtor therefore will be unable to proceed with operating its business without the ability to use Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest. In short, the Debtor's ability to finance its operations and the availability of sufficient working capital and liquidity to the Debtor through the use of Cash Collateral is vital to preserve and maintain the value of the Debtor's estate.

30.     The Debtor, therefore, seeks immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to its estate pending the Final Hearing pursuant to Bankruptcy Ru1e 400l(b)(2). Accordingly, to the extent that the Debtor requires the use of Cash Collateral, the Debtor respectfully submits that it has satisfied the requirements of Bankruptcy Rule 4001(b)(2) to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

ACTIVE/103662746.4

### III.     Modification of the Automatic Stay on a Limited Basis is Warranted

31.     The proposed Interim Order contemplates (and the proposed Final Order will contemplate) a modification of the automatic stay (to the extent applicable) as necessary to, inter alia, permit the Debtor to grant the security interests and liens described above, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens.  In addition, the Interim Order provides (and the proposed Final Order will provide) for modification of the automatic stay to allow the Prepetition Lender to exercise remedies after the occurrence of an Event of Default and the expiration of the Remedies Notice Period.

32.     Stay modification provisions of this kind are ordinary and standard terms of postpetition use by debtors-in-possession of prepetition collateral, and, in the Debtor's business judgment, are reasonable under the present circumstances. *See, e.g., In re Novum Pharma, LLC*, Case No. 19-10209 (KJC) [Docket No. 112] (Bankr. D. Del. March 6, 2019) (terminating automatic stay after occurrence of event of default and applicable notice); *In re Open Road Films, LLC*, Case No. 18-12012 (LSS) [Docket No. 51] (Bankr. D. Del. September 7, 2018) (same); *In re RM Holdco LLC*, Case No. 18-11795 (MFW) [Docket No. 53] (Bankr. D. Del. August 7, 2018) (same); *In re Heritage Home Grp. LLC*, Case No. 18-11736 (KG) [Docket No. 46] (Bankr. D. Del. July 31, 2018) (same); *In re EBH Topco, LLC*, Case No. 18-11212 (BLS) [Docket No. 55] (Bankr. D. Del. May 24, 2018) (same); *In re Gibson Brands, Inc.*, Case No. 18-11025 (CSS) [Docket No. 71] (Bankr. D. Del. May 2, 2018) (same); *In re Appvion, Inc.*,

Case No. 17-12082 (KJC) [Docket No. 75] (Bankr. D. Del. October 5, 2017). Accordingly, the

Debtor respectfully requests that the Court authorize the modification of the automatic stay in

accordance with the terms set forth in the Cash Collateral Orders.

### IV.    Request for a Final Hearing

33.    Pursuant to Bankruptcy Rules 4001(b)(2), the Debtor requests that the

Court set a date for the Final Hearing that is no later than thirty (30) days after the entry of the

Interim Order and fix the date and time prior to the Final Hearing for parties to file objections to

the relief requested by this Motion.

**IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND
IRREPARABLE HARM**

34.    Bankruptcy Rule 6003 provides that the relief requested in this Motion

may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R.

Bankr. P. 6003.  The Third Circuit has interpreted the language "immediate and irreparable

harm" in the context of preliminary injunctions.  In that context, the court has instructed that

irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the

merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk

S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*,

558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and

imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d

645, 653-55 (3d Cir. 1994).  The Debtor submits that for the reasons already set forth herein, the

relief requested in this Motion is necessary to avoid immediate and irreparable harm to the

Debtor and, accordingly, should be granted on an interim basis.

ACTIVE/103662746.4

## WAIVER OF NOTICE AND STAY UNDER BANKRUPTCY RULE 6004

35. To the extent that Bankruptcy Rule 6004(a) applies, the Debtor respectfully requests a waiver of such notice requirement in order to successfully implement the foregoing requested relief.

36. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

37. Notice of this Motion will be given to the following parties, or in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) the holders of the twenty (20) largest unsecured claims against the Debtor; (iii) counsel to the Prepetition Lender; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of Delaware and all other states in which the Debtor operates; (vi) all parties who are known, after reasonable inquiry, to have asserted a lien, encumbrance or claim in the Prepetition Collateral; (vii) any other party that has requested notice pursuant to Bankruptcy Rule 2002; and (viii) all

28

other parties entitled to notice pursuant to Local Rule 9013-1(m).  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtor will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## <u>NO PRIOR REQUEST</u>

38.    No previous request for the relief sought herein has been made to this Court or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtor respectfully requests entry of the Interim Order, substantially in the form attached hereto as <u>Exhibit A</u>, and following notice and the opportunity of parties-in-interest to be heard as contemplated herein, the Final Order, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 16, 2020
Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

<u>/s/ L. Katherine Good</u>
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Tel:: (302) 984-6000
Facsimile: (302) 658-1192
Email: kgood@potteranderson.com
        astulman@potteranderson.com

- and -

GOODWIN PROCTER LLP
Nathan A. Schultz (*pro hac vice* admission pending)
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
Tel: (415) 733-6000
Facsimile: (415) 677-9041
Email: nschultz@goodwinlaw.com

-and-

Barry Z. Bazian (*pro hac vice* admission pending)
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
Tel: (212) 833-8800
Facsimile: (212) 355-3333
Email: bbazian@goodwinlaw.com

*Proposed Counsel for Debtor and Debtor in Possession*

ACTIVE/103662746.4

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                             :

In re:                                 :    Chapter 11

                                 :

PROTEUS DIGITAL HEALTH, INC.,    :    Case No. 20-11580 (____)

                                 :

          Debtor.[1]                 :

                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, AND 507, AND
BANKRUPTCY RULES 2002, 4001, AND 9014 (I) AUTHORIZING
DEBTOR TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE
PROTECTION TO SECURED LENDER, AND (III) SCHEDULING A
<u>FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)</u>**

This matter is before the Court pursuant to the motion filed by Proteus Digital

Health, Inc., a Delaware corporation, as debtor and debtor in possession (the "<u>Debtor</u>"), on

June 15, 2020 (the "<u>Motion</u>"), seeking, among other relief, the entry of an interim order (this

"<u>Interim Order</u>"):

        (a)      authorizing the Debtor to use Cash Collateral (as defined below);

        (b)      granting adequate protection to OrbiMed Royalty Opportunities II, LP, a

Delaware limited partnership, as lender (in its capacity as such, the "<u>Prepetition Lender</u>") under

that certain *Credit Agreement* dated as of May 8, 2015 (as it has been amended, restated,

modified, supplemented, or replaced from time to time prior to the Petition Date (as defined

below) (the "<u>Prepetition Credit Facility</u>" and together with all agreements, documents, notes,

mortgages, security agreements, pledges, guaranties, forbearance agreements, subordination

---

[1]      The last four digits of the Debtor's taxpayer identification number are 2680.  The Debtor's corporate headquarters is located at 2600 Bridge Parkway, Redwood City, California 94065.

agreements, instruments, amendments, and any other agreements and documents delivered pursuant thereto or in connection therewith, including that certain Pledge and Security Agreement dated as of May 8, 2015 (the "Prepetition Security Agreement"), the "Prepetition Loan Documents") by and between the Debtor, as borrower, and the Prepetition Lender; and

(c)        scheduling a final hearing (the "Final Hearing") on the Motion pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Court having held an emergency hearing on June ____, 2020 (the "Interim Hearing") to consider the entry of an interim order approving the Motion pursuant to Bankruptcy Rule 4001(c)(2), and having found that, under the circumstances, due and sufficient notice of the Motion and the Interim Hearing was given by the Debtor in accordance with the Bankruptcy Rules; and the Court having heard and resolved or overruled any and all objections to the interim relief requested in the Motion; and it appearing that the interim relief requested in the Motion is in the best interests of the Debtor, the estate (the "Estate"), and creditors; and upon the record herein and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.        Petition Date.  On June 15, 2020 (the "Petition Date"), the Debtor commenced this chapter 11 case (this "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtor is operating its

---

[2] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

business and managing its affairs as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in the Chapter 11 Case.

B.    Jurisdiction and Venue.  The Court has jurisdiction over this Chapter 11 Case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue for this Chapter 11 Case and the Motion under 28 U.S.C. §§ 1408 and 1409.

C.    Notice.  The Interim Hearing is being held pursuant to Bankruptcy Rules 2002 and 4001 and Local Rule 4001-2(b).  Notice of the Interim Hearing was given by the Debtor on June ___, 2020 (Docket No. __).  Notice of the Motion was provided to: (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the Debtor's twenty (20) largest unsecured creditors; (vi) counsel to the Prepetition Lender; and (vii) all other known parties asserting a lien against any of the Debtor's assets, in each case by telecopy, email, overnight courier, and/or hand delivery.  Under the circumstances, notice of the Interim Hearing and the interim relief requested in the Motion is adequate and sufficient and complies with the Bankruptcy Rules and the Local Rules.

D.    Debtor's Acknowledgments and Stipulations.  In exchange for and as a material inducement for the Prepetition Lender to agree to the relief sought herein, the Debtor

acknowledges, represents, stipulates, and agrees, subject to the challenge rights set forth in paragraph 8 herein, as follows:

(i)     The Debtor and the Prepetition Lender entered into the Prepetition Credit Facility, pursuant to which the Debtor, as the prepetition borrower, obtained secured financing from the Prepetition Lender (collectively, the "Prepetition Obligations").

(ii)    The Prepetition Obligations are secured by valid, enforceable, duly perfected, and non-avoidable liens and security interests granted to the Prepetition Lender (the "Prepetition Liens") on the Collateral (as defined in the Security Agreement) (the "Prepetition Collateral").

(iii)   The Prepetition Liens are senior, first-priority liens on all of the Prepetition Collateral, except for any items of the Prepetition Collateral that are, as of the Petition Date, subject to valid, enforceable, duly perfected, and non-avoidable first-priority senior liens of third parties to the extent expressly permitted under the Prepetition Loan Documents (the "Permitted Liens" and the items of Prepetition Collateral securing the Permitted Liens collectively, the "Permitted Lien Collateral").

(iv)    As of June 15, 2020, (a) the aggregate amount of principal and accrued interest owed under the Prepetition Loan Documents to the Prepetition Lender is approximately $9,502,842.51, *plus* fees, expenses, and other additional amounts that are chargeable, reimbursable, or otherwise owing under the Prepetition Loan Documents; (b) all of the Prepetition Obligations are unconditionally owing by the Debtor to the Prepetition Lender; and (c) the Prepetition Obligations are not subject to any avoidance, reductions, offset, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims,

cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as and to the limited extent expressly set forth in paragraph 8 herein.

(v)    The Prepetition Liens constitute valid, binding, enforceable, and duly perfected liens and security interests, with priority over any and all other liens and security interests other than (only in respect of the Permitted Lien Collateral) the Permitted Liens, and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, recoupment, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as and to limited extent expressly set forth in paragraph 8 herein.

(vi)    The Debtor has waived, discharged, and released any right it may have to challenge the Prepetition Obligations or the Prepetition Liens on the Prepetition Collateral, or to assert any offsets, recoupment, defenses, claims, objections, challenges, Avoidance Actions (as defined below), causes of action, and/or choses of action against the Prepetition Lender, with respect to the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral, or any matters arising therefrom or related thereto.

(vii)    Any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral, (b) made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors, or (c) otherwise not subject to any avoidance, offset, recoupment, counterclaim, or

defense (including, without limitation, under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code).

(viii)    All of the Debtor's cash as of the Petition Date, including, without limitation, the cash in its deposit accounts, securities accounts, and any other accounts, wherever located, whether as original collateral or as proceeds of other Prepetition Collateral, constitutes Cash Collateral of the Prepetition Lender.

E.    Cash Collateral.  For purposes of this Interim Order, the term "Cash Collateral" shall mean and include, without limitation, all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Prepetition Lender holds a lien, security interest, or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise, and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease, license, disposition, use, or conversion of any tangible or intangible property, including, without limitation, insurance policies;

(ii)    all of the Debtor's interests in respective deposits, refund claims, and retainers, in each case in or on which the Prepetition Lender has a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise;

(iii)    the proceeds of any sale of Prepetition Collateral in connection with any sale consummated prior to entry of the Interim Order;

(iv)    all of the Debtor's cash, including, without limitation, the cash in its deposit accounts, securities accounts, and any other accounts, wherever located, whether as original collateral or as proceeds of other Prepetition Collateral; and

(v)    any and all other "cash proceeds" (as defined in the Uniform Commercial Code as enacted in the State of New York) of the Prepetition Collateral, or of any proceeds thereof.

F.    <u>Adequate Protection</u>.  The Prepetition Lender is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection to the extent of any diminution occurring from and after the Petition Date in the value of its interests in the Prepetition Collateral as of the Petition Date, including, without limitation, the Cash Collateral, resulting from, among other things, (a) the use of Cash Collateral, (b) the acquiescence of the Prepetition Lender in the Carve-Out, (c) any other diminution in the value of the Prepetition Collateral as a result of its use, lease, consumption or disposition, and (d) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "<u>Diminution in Value</u>").

G.    <u>Good Cause Shown</u>.  Good cause has been shown for entry of this Interim Order. The ability of the Debtor to use cash collateral is vital to the Debtor's Estate and creditors, and the Debtor's agreement to the terms and conditions set forth in this Interim Order is a prudent exercise of the Debtor's sound business judgment.  The use of Cash Collateral will enable the Debtor to maximize and preserve the value of the Debtor's business pending the consummation of a plan or a sale of substantially all of its assets, and to satisfy payroll obligations and other working capital and general corporate purposes of the Debtor consistent with the terms set forth

in this Interim Order and the Approved Budget (as defined below).  Among other things, entry of this Interim Order is necessary to maximize the value of the Debtor's assets and to avoid immediate and irreparable harm to the Debtor and its Estate and, accordingly, is in the best interests of the Debtor, its Estate, and its creditors.

H.    Sections 506(c) and 552(b) Waivers; Marshaling Waiver.    In light of the Prepetition Lender's agreement to the Carve-Out and to permit the use of its Cash Collateral for payments made in accordance with the Approved Budget and the terms of the Interim Order and the Final Order, subject to the entry of the Final Order, the Prepetition Lender is entitled to (1) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code , (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code, and (3) a waiver of any marshaling obligation and any right to seek to compel marshaling (if and to the extent applicable).

I.    Immediate Entry of Order.    The Debtor has requested immediate entry of this Interim Order pursuant to 4001(b)(2) and Local Rule 4001-2(b).  The permission granted herein to use Cash Collateral and grant adequate protection is necessary, essential, and appropriate to the preservation of the Debtor's assets.  The Court concludes that immediate entry of this Interim Order is in the best interests of the Debtor's Estate and creditors, as its implementation will, among other things, sustain the continued operations of the Debtor's business and thereby enhance the Debtor's prospects for a reorganization or a successful sale of substantially all of its assets.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and the Prepetition Lender having expressly consented to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.  The use of Cash Collateral authorized hereunder shall expire without further notice or hearing on the earlier of (a) July 31, 2020, if the Final Order has not been entered by the Court prior to such date; and (b) the Termination Date (as defined below).

<u>**Authorization for Use of Cash Collateral**</u>

2.      Authorization for Use of Cash Collateral.

(a)      The Debtor is hereby authorized to use Prepetition Collateral, including Cash Collateral in accordance with the Approved Budget, subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, without further approval by the Court.

(b)      <u>Approved Budget</u>.  The Debtor has delivered to the Prepetition Lender a 13-week budget that has been approved by the Prepetition Lender (the "<u>Approved Budget</u>") for the time period commencing with the Petition Date.  A copy of the Approved Budget is attached hereto as **Exhibit A**.  Every week following entry of this Interim Order, on the third business day

of the first week following the Petition Date, the Debtor shall provide the Prepetition Lender

with an updated budget for the following 13-week period.  Each updated budget shall be in form

and substance acceptable to the Prepetition Lender and shall not be deemed to constitute the

"Approved Budget" for purposes of this Interim Order until the Prepetition Lender's approval of

such updated budget has been confirmed in writing by counsel to the Prepetition Lender.  The

Debtor shall provide to the Prepetition Lender financial reporting with respect to the Debtor as

provided in this Interim Order.  Cash Collateral used under this Interim Order shall be used by

the Debtor only in accordance with the Approved Budget and this Interim Order.  The consent of

the Prepetition Lender to the Approved Budget shall not be construed as a commitment to permit

the use of Cash Collateral after the occurrence of the Termination Date, regardless of whether the

aggregate funds shown on the Approved Budget have been expended; *provided* that the

Prepetition Collateral may be utilized for the Carve-Out as, and to the limited extent, expressly

provided by paragraph 6 of this Interim Order.

(c)     By not later than four (4) business days after the end of the week

following the Petition Date, the Debtor shall deliver to the Prepetition Lender a variance report in

form and substance acceptable to the Prepetition Lender in its sole and absolute discretion (an

"Approved Variance Report") showing comparisons of actual results for each line item against

such line item in the Approved Budget.  Thereafter, the Debtor shall deliver to the Prepetition

Lender, by not later than four (4) business days after the close of each weekly period after the

Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer

than four weeks have elapsed since the Petition Date, then for the trailing one-, two-, or three-

week period, as applicable).  Each Approved Variance Report shall indicate whether there are

any adverse variances that exceed the "Permitted Variances," which means, in each case

measured on a cumulative basis, (x) up to 10% for cash disbursements measured weekly on a

line-item basis, or (y) up to 10% in the aggregate for all cash disbursements ("Permitted

Variances"); provided, however, that for purposes of calculating variances, cash disbursements

shall not include disbursements made by the Debtor in payment of professional fees and

expenses related to administration of the Chapter 11 Case.

(d)     The Prepetition Lender (i) may assume that the Debtor will comply with

the Approved Budget, (ii) shall have no duty to monitor such compliance, and (iii) shall not be

obligated to pay (directly, or indirectly from any Prepetition Collateral that has been paid,

disbursed or distributed to the Prepetition Lender) any unpaid expenses incurred or authorized to

be incurred pursuant to the Approved Budget; *provided* that the foregoing does not affect the

Debtor's right, subject to the terms of this Interim Order, to use the Prepetition Collateral to (x)

make payments pursuant the Approval Budget, and/or (y) fund the Carve-Out as, and to the

limited extent, expressly provided by paragraph 6 of this Interim Order.

**Adequate Protection**

3.     Adequate Protection for Prepetition Lender.  As adequate protection against, and

limited to the extent of, any Diminution in Value, the Prepetition Lender is hereby granted the

following ((a) through (e) below shall be referred to collectively as the "Adequate Protection

Rights"):

(a)      <u>Replacement Liens</u>.  To secure the Adequate Protection Claim (as defined below), and pursuant to sections 361(2) and 363(2) of the Bankruptcy Code, the Prepetition Lender is hereby granted valid, binding, continuing, enforceable, fully-perfected, and non-voidable postpetition security interests in and liens on, subject only to the Carve-Out (collectively, the "<u>Replacement Liens</u>") as follows:

(1)      *First Priority Replacement Lien on Unencumbered Property*.

Replacement Lien on all of the Debtor's and the Estate's right, title, and interest in and to all tangible and intangible assets and property, including, without limitation, all prepetition and postpetition assets and property of the Debtor or of the Estate, and all products and proceeds thereof, and proceeds of proceeds, in each case whether existing on or as of the Petition Date or thereafter acquired, and in each case that are not subject to any (x) valid, binding, enforceable, duly perfected, and non-avoidable liens in existence on or as of the Petition Date or (y) valid, binding, enforceable, and non-avoidable liens in existence as of the Petition Date that are duly perfected after the Petition Date as and to the extent permitted by section 546(b) of the Bankruptcy Code (collectively, the "<u>Unencumbered Property</u>"), including, without limitation, all accounts, receivables, rights to payment, cash, general intangibles, payment intangibles, instruments, contracts, securities, investment property, chattel paper, owned real estate, real property leaseholds, goods, inventory, fixtures, machinery, equipment, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under

license agreements (either as licensor or as licensee), intellectual property of any kind, claims and causes of action (including, without limitation, those arising under section 549 of the Bankruptcy Code), commercial tort claims, the proceeds of all of the foregoing, and proceeds of such proceeds; *provided* that the Unencumbered Property shall not include the Avoidance Actions, but subject to the entry of the Final Order, the Unencumbered Property shall include, without limitation, and the Replacement Liens shall attach to, any and all payments, judgments, settlements, property, and proceeds avoided or recovered on account of, or in respect of, any and all Avoidance Actions; *provided*, *further*, that the collateral under this clause 3(a)(1) shall not include any contract, license, or lease (other than Prepetition Collateral or Cash Collateral) upon which, and solely to the extent that, the grant of a Replacement Lien as contemplated in this Interim Order would constitute a default or event of default under such contract, license, or lease (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable non-bankruptcy law), but the collateral under this clause 3(a)(1) shall in any event include, without limitation, all collections on account of, or proceeds in respect of, any such contract, license, or lease.

(2)     *Replacement Liens Junior to Certain Senior Existing Liens.*
Replacement Liens on all of the Debtor's and the Estate's right, title, and interest in and to tangible and intangible assets and property (*other than* the property

described in clause (1) or clause (3) of this paragraph 3(a)), including, without limitation, all prepetition and postpetition assets and property of the Debtor or of the estate, and all products and proceeds thereof, and proceeds of proceeds, in each case whether existing on or as of the Petition date or thereafter acquired, and in each case that are subject to any (x) valid, binding, enforceable, duly perfected, and non-avoidable liens in existence on or as of the Petition Date in favor of a creditor other than the Prepetition Lender or (y) valid, binding, enforceable, and non-avoidable liens in favor of a creditor other than the Prepetition Lender in existence as of the Petition Date that are duly perfected after the Petition Date as and to the extent permitted by section 546(b) of the Bankruptcy Code (the liens in clauses (x) and (y) above, collectively, but only to the extent senior in priority to the Prepetition Liens of the Prepetition Lender, the "Senior Existing Liens"), including, without limitation, all accounts, receivables, rights to payment, cash, general intangibles, payment intangibles, instruments, contracts, securities, investment property, chattel paper, owned real estate, real property leaseholds, goods, inventory, fixtures, machinery, equipment, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements (either as licensor or as licensee), intellectual property of any kind, claims and causes of action (excluding Avoidance Actions), commercial tort claims, the proceeds of all of the foregoing, and proceeds of such proceeds; *provided* that such Replacement Liens in favor of the Prepetition Lender shall be

junior in priority solely to the extent that the Senior Existing Liens were, as of the Petition Date, senior in priority to the Prepetition Liens in favor of the Prepetition Lender; *provided*, *further*, that the collateral under this clause 3(a)(2) shall not include any contract, license, or lease (other than Prepetition Collateral or Cash Collateral) upon which, and solely to the extent that, the grant of a Replacement Lien as contemplated in this Interim Order, would constitute a default or event of default under such contract, license, or lease (and such default would not be excused or rendered ineffective by operation of the Bankruptcy Code or applicable non-bankruptcy law), but the collateral under this clause 3(a)(2) shall in any event include, without limitation, all collections on account of, or proceeds in respect of, any such contract, license, or lease.

(3)      *Replacement Liens Senior to Certain Existing Liens of Prepetition Lender.*  Replacement Liens on, and security interests in, all of the Debtor's and the Estate's right, title, and interest in and to all tangible and intangible assets and property, including, without limitation, all prepetition and postpetition assets and property of the Debtor or of the Estate, and all products and proceeds thereof, and proceeds of proceeds, in each case whether existing on or as of the Petition Date or thereafter acquired, including, without limitation, all accounts, receivables, rights to payment, cash, general intangibles, payment intangibles, instruments, contracts, securities, investment property, chattel paper, owned real estate, real property leaseholds, goods, inventory, fixtures, machinery, equipment, deposit

accounts, securities accounts, patents, copyrights, trademarks, trade names, rights

under license agreements (either as licensor or as licensee), intellectual property

of any kind, claims and causes of action (excluding Avoidance Actions),

commercial tort claims, the proceeds of all of the foregoing, and proceeds of such

proceeds; *provided* that such liens and security interests shall not prime any

Existing Senior Liens senior in priority to the Prepetition Liens of the Prepetition

Lender; *provided*, *further*, that the collateral under this clause 3(a)(3) shall not

include any contract, license, or lease (other than Prepetition Collateral or Cash

Collateral) upon which, and solely to the extent that, the grant of a Replacement

Lien as contemplated in this Interim Order, would constitute a default or event of

default under such contract, license, or lease (and such default would not be

excused or rendered ineffective by operation of the Bankruptcy Code or

applicable non-bankruptcy law), but the collateral under this clause 3(a)(3) shall

in any event include, without limitation, all collections on account of, or proceeds

in respect of, any such contract, license, or lease.

(4)    *Status of Replacement Liens*.  The Replacement Liens shall not be

(i) subject or subordinate to (A) any lien or security interest that is avoided and

preserved for the benefit of the Estate under section 551 of the Bankruptcy Code

or (B) any lien or security interest arising after the Petition Date, subject to the

Carve Out; or (ii) except as otherwise explicitly set forth in clause (1), clause (2),

or clause (3) of this paragraph 3(a), subordinated to, or made *pari passu* with, any

other lien or security interest, now or hereafter existing and whether authorized

under sections 363 or 364 of the Bankruptcy Code or otherwise.

The Replacement Liens shall be and hereby are deemed fully perfected liens and

security interests, effective and perfected upon the date of this Interim Order, with the priorities

set forth in this Interim Order, without the necessity of the execution, recordation, or filing of

any mortgages, security agreements, pledge agreements, financing agreements, financing

statements, filings in the U.S. Patent and Trademark Office or the U.S. Copyright Office or any

foreign office, or any other agreements, instruments, documents, notices, recordations, or filings,

domestic or foreign, such that no additional actions need be taken by the Prepetition Lender, by

the Debtor, or by any other person or entity to grant or perfect such interests or to effect the

priorities set forth in this Interim Order.

(b)     <u>Adequate Protection Superpriority Claim</u>.  As further adequate protection

against, and limited to the extent of, any Diminution in Value, the Prepetition Lender is hereby

granted a superpriority claim, which claim shall have priority over all administrative expense

claims and all other unsecured claims against the Debtor or the Estates, now existing or hereafter

arising, of any kind or nature whatsoever, including, without limitation, administrative expenses

of the kind specified in or ordered pursuant to section 105, section 326, section 328,

section 330, section 331, section 503(a), section 503(b), section 506(c), section 507(a),

section 507(b), section 546(c), section 552(b), section 726, section 1113 or section 1114, or

pursuant to any other provision of the Bankruptcy Code (the "<u>Adequate Protection Claim</u>"),

*provided*, *however*, that the Adequate Protection Claim shall be subject and subordinate only to the Carve-Out.

(c)    <u>Payment of Reasonable Postpetition Professional Fees and Expenses of Prepetition Lender</u>.  As further adequate protection, and subject to the terms set forth in this paragraph, all reasonable and documented postpetition professional fees and expenses reimbursable under the Prepetition Loan Documents incurred or to be incurred by the Prepetition Lender shall be paid by the Debtor to the Prepetition Lender (collectively, the "<u>Lender Professional Fees</u>").  Subject to the terms set forth in this paragraph, the Debtor is hereby authorized and directed to pay all such Lender Professional Fees in accordance with the terms of the Prepetition Loan Documents, without the need for filing any further fee application, pleading, notice, or document with the Court for approval or payment of such Lender Professional Fees. Such Lender Professional Fees shall include, without limitation, all reasonable and documented fees, expenses, and disbursements of outside counsel (including, without limitation, a local counsel firm), a financial advisor, and any experts in connection with this Chapter 11 Case and any Successor Case (as defined below), including, without limitation, relating to (a) the preparation, negotiation, implementation, and enforcement of this Interim Order and the Final Order; (b) any amendment or waiver of any provision of the Prepetition Loan Documents, this Interim Order, or the Final Order; (c) the enforcement or protection of any of the Prepetition Lender's rights and remedies under the Prepetition Loan Documents, this Interim Order, and the Final Order; (d) the administration of this Chapter 11 Case and any Successor Case, and any proceedings arising in or related thereto; and (e) the negotiation, formulation, drafting, proposal,

and implementation of a plan of reorganization or liquidation or a sale under section 363. The Lender Professional Fees shall be paid within ten (10) days (which time period may be extended by written agreement of the applicable professional) after the receipt by the Debtors, the Creditors' Committee, and the U.S. Trustee (the "Review Period") of invoices therefor (the "Invoiced Fees"). The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably and sufficiently detailed description of services provided and the expenses incurred by the applicable professional to permit a review for reasonableness; *provided*, *however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail. The Debtor, the Creditors' Committee, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "Disputed Invoiced Fees") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the Prepetition Lender and the applicable professional of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided* that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

        (d)        <u>Consent to Use of Cash Collateral Subject to Adequate Protection Rights</u>. The Prepetition Lender consents to the use of Cash Collateral to the extent set forth in this

Interim Order and the Approved Budget; *provided*, *however*, that (i) such consent is expressly conditioned upon the provision of the Adequate Protection Rights and the entry of this Interim Order (in form and content satisfactory to the Prepetition Lender in its sole discretion), (ii) such consent shall not be deemed a basis to deny, impair, or alter the Prepetition Lender's entitlement to the Adequate Protection Rights, and (iii) such consent shall be of no force or effect in the event that this Interim Order is not entered or is vacated or is modified in any respect without the express written consent of the Prepetition Lender in its sole discretion.

   (e) <u>Further Adequate Protection</u>.  Nothing in this Interim Order shall, or shall be deemed to, limit, abridge, or otherwise affect the rights of (i) the Prepetition Lender to request at any time that the Court order the provision of additional or further adequate protection of its interests in the Prepetition Collateral (including, without limitation, the Cash Collateral) as may be appropriate in the event that the Adequate Protection Rights provided herein may be inadequate, and (ii) the Debtor or any other party in interest to object to any such request.

   4. <u>Survival of Replacement Liens, Adequate Protection Claim, and Other Adequate Protection Rights</u>.  The Replacement Liens, the Adequate Protection Claim, the other Adequate Protection Rights, and all other rights and remedies granted to the Prepetition Lender under the Interim Order, shall continue in this Chapter 11 Case and in any successor case under the Bankruptcy Code (including, without limitation, any case under chapter 7 of the Bankruptcy Code, a "<u>Successor Case</u>"), and shall be and remain valid and enforceable (i) against any chapter 11 trustee appointed in the Chapter 11 Case, (ii) against any chapter 7 trustee appointed in a Successor Case, (iii) against any other representative of the estate or any assignee of assets

or rights of the Estate, and (iv) upon any conversion or dismissal of the Chapter 11 Case or any

Successor Case; and all Replacement Liens and security interests shall maintain their perfected

status and respective priority as provided in this Interim Order until the Adequate Protection

Claim has been indefeasibly paid in full in cash and satisfied.

5.    Credit Bid.   Nothing in this Interim Order shall be construed to deprive the

Prepetition Lender of the right to "credit bid" the Prepetition Loan Obligations pursuant to

section 363(k) and/or section 1129(b)(2)(A)(ii) of the Bankruptcy Code.

**Carve-Out; Restrictions on Use of Funds**

6.    Carve-Out.

(a)    Only if, and to the limited extent that, sufficient unencumbered funds are

not available in the Estate at the time that a payment of any of the administrative priority

expenses specified below in clause (i), clause (ii), clause (iii), or clause (iv) is otherwise due, the

Replacement Liens, the Adequate Protection Claim, and the Prepetition Liens shall be subject

only to, and proceeds of any collateral therefor may be used to pay only: (i) unpaid fees and

expenses required to be paid by the Debtor to the Clerk of the Court or to the Office of the

United States Trustee under 28 U.S.C. § 1930(a)(6); (ii) reasonable fees and expenses incurred

by a trustee in any Successor Case under section 726(b) of the Bankruptcy Code in an aggregate

cumulative amount not to exceed $25,000; (iii) to the extent allowed by the Court at any time,

but limited in any event to the respective aggregate cumulative amount for each professional

(including, without limitation, any noticing agent) set forth in the Approved Budget (and only if

the retention or employment of such professional (including, without limitation, any noticing

agent) has been approved pursuant to a final order of the Court), accrued and unpaid (net of any prepetition retainers) reasonable fees, disbursements, costs, and expenses incurred by any professional for the Debtor (collectively, the "Debtor's Professionals Fees") or for a Creditors' Committee (collectively, the "Committee's Professionals Fees" and together with the Debtor's Professionals Fees, the "Estate Professional Fees") at any time before or on the first business day following delivery by the Prepetition Lender of a Carve-Out Trigger Notice (as defined below), whether allowed by the Court prior to or after the date of a Carve-Out Trigger Notice; and (iv) to the extent allowed at any time, Debtor's Professional Fees incurred after the first business day following delivery by the Prepetition Lender of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $100,000; (v) to the extent allowed at any time, Committee's Professional Fees incurred after the first business day following delivery by the Prepetition Lender of a Carve-Out Trigger Notice, in an aggregate amount not to exceed $25,000 (the amounts set forth in the foregoing clauses (i)-(vi) being the "Carve-Out Cap").  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by the Prepetition Lender (which delivery shall be made via electronic mail) to the Debtor's counsel, the United States Trustee, and counsel to any Creditors' Committee, which notice may be delivered at any time either (1) following the occurrence of the Termination Date, or (2) following the occurrence of an Event of Default (as defined below), stating that the Carve-Out Cap has been invoked.

(b)    The Carve-Out does not include any Permitted Variances, and all references to amounts set forth in the Approved Budget shall be limited to the amounts specified without taking into account any Permitted Variances.

(c)      Nothing contained in this Interim Order shall be construed:  (i) to exempt those persons seeking Estate Professional Fees who may receive interim compensation payments or reimbursement of expenses pursuant to any Court-approved procedure, from all provisions of bankruptcy law otherwise applicable, including, without limitation, any requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate final fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, or (ii) as consent to the allowance of any fees and expenses referred to above; and shall not affect any right of the Prepetition Lender to object to the reasonableness of such amounts or to object on any other basis.

(a)      Prior to the Termination Date, and so long as a Carve-Out Trigger Notice has not been delivered, the Debtor is authorized and directed to segregate funds in a designated professional fee trust account  (the "Account") in the amount equal to, but not to exceed, the Estate Professional Fees budgeted for professionals retained by the Debtor or the Committee (the "Retained Estate Professionals") for each such month (the "Budgeted Estate Professional Expenses") plus (for June 2020) the amounts set forth in clauses (iv) and (v) of subsection 6(a) above).  The Prepetition Lender shall not have any responsibility, liability, or obligation whatsoever to ensure that the Debtor funds the Account or that the Account has funds equal to the aggregate amount of Budgeted Estate Professional Expenses for any applicable period.  The Debtor is authorized and directed to fund the Account only up to, but not to exceed, the amount of Budgeted Estate Professional Expenses set forth in the Approved Budget for any month.  Such funds shall be held for the benefit of the Retained Estate Professionals, to be applied to the Estate

Professional Fees of the Retained Estate Professionals that are approved for payment pursuant to one or more orders of this Court.  Any Estate Professional Fees payable to the Retained Estate Professionals shall be paid first out of the Account (following full application of any prepetition retainers), and all amounts deposited in the Account shall reduce, on a dollar-for-dollar basis, the Carve-Out.  Any excess amounts in the Account after payment of the Estate Professional Fees shall be subject in all respects to the Prepetition Liens and the Replacement Liens.  The funds in the Account shall remain Prepetition Collateral (subject to the Carve-Out, if any) unless and until such funds are paid to the Retained Professionals.

(d)     Notwithstanding the delivery and effectiveness of a Carve-Out Trigger Notice, the Debtor shall be entitled to use Cash Collateral to pay payroll expenses that have accrued through the date of the Carve-Out Trigger Notice and trust fund taxes that were included in the Budget but remain unpaid.

(e)     Prior to or in accordance with the entry of any order dismissing the Chapter 11 Case, each professional that incurs Estate Professional Fees shall have an opportunity to seek allowance of all Estate Professional Fees incurred by such professional prior to the effective date of any such dismissal.

7.     <u>Restrictions on Use of Cash Collateral</u>.

(a)     Notwithstanding anything to the contrary in this Interim Order, no Prepetition Collateral (including, without limitation, Cash Collateral), and no portion of the Carve-Out may be used to pay any fees or expenses or claims for services rendered by any of the professionals retained by the Debtor, by a Creditors' Committee, by any creditor or other party in

interest, by any other committee, by any trustee appointed in this Chapter 11 Case or in a Successor Case, or for any other party to (i) request authorization to obtain any postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code; or (ii) investigate (except as set forth in paragraph 7(b) below), assert, join, commence, support, or prosecute (x) any potential or actual action or claim, counterclaim, cross-claim, action, proceeding, application, motion, objection, setoff, or defense, or (y) any other contested matter or adversary proceeding, in each case seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, the Prepetition Lender, or any of its officers, directors, employees, agents, attorneys, affiliates, partners, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (A) any avoidance actions or other actions arising under chapter 5 of the Bankruptcy Code ("Avoidance Actions"); (B) any action relating to any act, omission, or aspect of the relationship between the Prepetition Lender, on the one hand, and the Debtor or any of its affiliates, on the other; (C) any action with respect to the validity or extent of the Prepetition Obligations, or the validity, extent, or priority of the Prepetition Liens or the Replacement Liens; (D) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the Prepetition Liens or the Replacement Liens; or (E) any action that has the effect of preventing, hindering, or delaying (whether directly or indirectly) the Prepetition Lender in respect of its liens and security interests in the Cash Collateral or the Prepetition Collateral, except to contest the occurrence or continuance of any Event of Default; (iii) except as set forth in the Approved Budget, pay any claim of a creditor (as such terms are defined in the Bankruptcy Code) without the prior written

consent of the Prepetition Lender (in its sole and absolute discretion); or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of Prepetition Collateral, unless otherwise expressly permitted by this Interim Order, without the express written consent of the Prepetition Lender (in its sole and absolute discretion).

(b)     Notwithstanding the foregoing, up to $50,000 in the aggregate of the Carve-Out may be used by the Creditors' Committee to investigate (but not prosecute) the extent, validity, avoidability, and priority of the Prepetition Obligations, the Prepetition Liens, or any other claims against the Prepetition Lender, so long as such investigation occurs within the Challenge Period (as defined below).

8.      Reservation of Certain Third-Party Rights and Bar of Challenges and Claims.

(a)     The Debtor's acknowledgements and stipulations set forth in paragraph D above and the releases set forth in paragraph 9 below (collectively, the "Debtor's Stipulations") are final and binding upon the Debtor in all circumstances upon entry of this Interim Order. The Debtor's Stipulations shall be binding upon each other party in interest, including, without limitation, a Creditors' Committee, unless a Challenge (defined below) is commenced by a Creditors' Committee within the Challenge Period and a final, non-appealable order is entered sustaining any such Challenge.

(b)     "Challenge" and "Challenges" shall mean individually or collectively: (i) an adversary proceeding or contested matter against the Prepetition Lender challenging the admissions, stipulations, findings, or releases included in the Debtor's Stipulations, or (ii) an adversary proceeding or contested matter against the Prepetition Lender in connection

with or related to (A) the Prepetition Credit Facility; (B) the prepetition business relationship between the Prepetition Lender and the Debtor, or the prepetition conduct of the Prepetition Lender with respect to the Debtor; (C) alleged prepetition actions or inactions of the Prepetition Lender arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the Prepetition Lender in the nature of an "equitable subordination," "lender liability," "deepening insolvency," or "control person" liability; (D) any avoidance, offset, recoupment, counterclaim, or defense to the Prepetition Obligations (including, without limitation, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code), or (E) any avoidance of or challenge (whether pursuant to chapter 5 of the Bankruptcy Code or otherwise) to any transfer made by or on behalf of the Debtor to or for the benefit of the Prepetition Lender.

(c)    Subject to paragraph 8(f) below, unless otherwise agreed in writing by the Prepetition Lender, any Challenge under this paragraph 8 must be commenced by a party in interest with standing and requisite authority to bring the Challenge by no *later* than (i) (x) for a Creditors' Committee (if appointed), the sixtieth (60th) calendar day following the formation of the Creditors' Committee, or (y) for all other parties (other than the Debtor) the seventy-five (75th) calendar day following the date of entry of this Interim Order, and (ii) any such other or later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in the foregoing clauses (i)(x) or (i)(y) of this paragraph (the time period established by the foregoing clauses (i) and (ii), the "Challenge Period").

(d)     The "<u>Challenge Period Termination Date</u>" shall be (i) if no Challenge is filed during the Challenge Period, the next calendar day after the last day of the Challenge Period or (ii) if a Challenge is filed during the Challenge Period, the next calendar day after the day on which Challenge is fully and finally adjudicated by a final order or judgment that is subject to no further appeal.

(e)     Except as may otherwise be fully and finally adjudicated before the Challenge Period Termination Date as a result of a timely Challenge, upon the Challenge Period Termination Date and for all purposes, including, without limitation, in this Chapter 11 Case and any Successor Case, (i) all payments made to or for the benefit of the Prepetition Lender (whether prior to, on, or after the Petition Date) shall be indefeasible and shall not be subject to counterclaim, offset, recoupment, subordination, recharacterization, defense, recovery, or avoidance; (ii) any and all Challenges by any party whatsoever shall be deemed to be forever released, waived, and barred; (iii) the Prepetition Obligations shall be deemed to be secured by a valid, binding, enforceable, duly perfected, and non-avoidable security interest and lien in the Prepetition Collateral and Replacement Liens; (iv) the Prepetition Obligations shall be deemed to be a fully allowed claim; and (v) the Debtor's Stipulations shall be binding on all parties whatsoever, including, without limitation, any Creditors' Committee and any trustee or trustees appointed in this Chapter 11 Case or in any Successor Case.

(f)     If a trustee is appointed in the Chapter 11 Case, or if the Chapter 11 Case is converted to a chapter 7 case, in either case *prior to the expiration of the Challenge Period*, the chapter 11 trustee or chapter 7 trustee, as applicable (and in either instance, the "trustee"), shall

have until the *later* of (1) the expiration of the Challenge Period or (2) the twentieth (20th) calendar day (or the first business day thereafter if the tenth calendar day is a Saturday, Sunday, or legal holiday) after the appointment of the chapter 11 trustee or the conversion of the Chapter 11 Case to a chapter 7 case, as applicable, to commence a Challenge.  If a Creditors' Committee has commenced a timely Challenge prior to appointment of a chapter 11 trustee or conversion of the Chapter 11 Case to a chapter 7 case, the trustee shall be entitled to elect to be substituted in as the plaintiff or moving party and assume control of the Challenge.  Whether the trustee commences a Challenge or assumes control of an existing Challenge, the trustee shall not, for the purpose of such Challenge, be bound by the Debtor's Stipulations, except as provided in paragraph 8(e) above.

9.    Release.    The releases, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph shall be deemed effective immediately upon entry of this Interim Order and subject only to the Challenge rights set forth in paragraph 8 above. The Debtor hereby forever and irrevocably (i) releases, discharges, and acquits the Prepetition Lender, and its former or current officers, employees, directors, affiliates, partners, agents, representatives, owners, members, partners, financial advisors, legal advisors, managers, consultants, accountants, attorneys, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, Avoidance Actions, indebtedness, obligations, counterclaims, cross-claims, offsets, recoupments, subordinations, recharacterizations, defenses, recoveries, and Challenges, of every type, relating to any aspect of the relationship between the Prepetition Lender or its affiliates, on

the one hand, and the Debtor or its affiliates, on the other hand, arising out of or in any way

relating to the Prepetition Credit Facility, the Prepetition Obligations, the Debtor's attempts to

restructure the Prepetition Obligations, any and all claims and causes of action arising under title

11 of the United States Code, and any and all claims regarding the validity, enforceability,

priority, perfection, or avoidability of the liens or secured claims of the Prepetition Lender,

including, without limitation, any equitable subordination claims or defenses; and (ii) waives any

and all defenses (including, without limitation, offsets, recoupments, counterclaims, and cross-

claims of any nature or kind) as to the validity, enforceability, priority, perfection, or avoidability

of the Prepetition Obligations and the Prepetition Liens.

## Termination; Remedies; Modification of Automatic Stay

10.    <u>Termination</u>.  The Debtor's right, and the right of any other representative of the

Estate, to use Cash Collateral under this Interim Order shall terminate (other than in respect of

the Carve-Out as, and to the limited extent, expressly provided in paragraph 7 of this Interim

Order), automatically and without the need for notice or demand by the Prepetition Lender or

any further order of the Court, on the earliest to occur of the following: (a) September 11, 2020

(the "<u>Outside Date</u>"); (b) thirty-five (35) calendar days after the Petition Date if the Final Order

has not been entered by such date; (c) the closing date of any sale (i) of the Debtor's business, or

(ii) any material portion of the Debtor's intellectual property, or (iii) of substantially all of the

assets of the Estate; (d) the appointment of a chapter 11 trustee or of an examiner with expanded

powers in the Chapter 11 Case (having powers beyond those set forth in sections 1106(a)(3) and

(4) of the Bankruptcy Code); (e) the conversion of the Chapter 11 Case to a case under chapter 7

of the Bankruptcy Code; (f) the dismissal of the Chapter 11 Case; (g) (i) any material violation or breach (other than by the Prepetition Lender), of any of the provisions of this Interim Order, or (ii) the occurrence of any of the events described in paragraph 24 below; (h) any other (i.e. not material) violation or breach by the Debtor of any of the provisions of this Interim Order that is not cured within five (5) business days of written notice from the Prepetition Lender (either (g)(i), (g)(ii), or (h), an "Event of Default"); (i) July 15, 2020 if the Debtor has not received at least $3,200,000 from Otsuka Pharmaceutical Co., Ltd., and (j) the effective date of any plan of reorganization in the Chapter 11 Case that has been confirmed by an order of the Court.  The date on which the earliest of clauses (a) through (j) occurs is referred to as the "Termination Date."

       11.    Remedies and Stay Modification.

       (a)    The automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed, and are hereby, modified, without the need for further order of the Court, to permit the Prepetition Lender upon, or at any time after, the occurrence of any Termination Date (including, without limitation, as a result of the occurrence of any Event of Default under this Interim Order) to deliver written notice by electronic mail to counsel for the Debtor, counsel for any Creditors' Committee, counsel for any trustee, and counsel for the U.S. Trustee, stating that the Prepetition Lender elects to commence the exercise of rights and remedies in respect of this Interim Order and the Prepetition Loan Documents, and under applicable bankruptcy and non-bankruptcy law, including, without limitation, in respect of its Prepetition Collateral and its Replacement Liens (a "Remedies Notice").

(b)     Subject to paragraph 11(c) below, following the fifth (5th) business day following the delivery by the Prepetition Lender of a Remedies Notice (the "Remedies Notice Period"), the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed, and are hereby, modified, without the need for further order of the Court, to permit the Prepetition Lender to exercise all rights and remedies provided for in this Interim Order or in the Prepetition Loan Documents or under applicable bankruptcy or non-bankruptcy law, including, without limitation, the rights to (in all instances subject to the Carve-Out) (i) take any actions reasonably calculated to preserve or safeguard the assets and property subject to the Prepetition Liens and/or Replacement Liens and/or to prepare any or all such assets and property for sale; (ii) foreclose or otherwise enforce the Prepetition Liens and the Replacement Liens; (iii) exercise collection rights in respect of the Prepetition Liens and the Replacement Liens, including, without limitation, in respect of deposit accounts, securities accounts, accounts receivable, payment intangibles, licenses, instruments, and/or any other rights to payment, proceeds, and Cash Collateral, and sweep Cash Collateral as provided in the Prepetition Loan Documents or under applicable law; and (iv) exercise any other rights and remedies under this Interim Order, the Prepetition Loan Documents, applicable bankruptcy law, and/or applicable non-bankruptcy law.

(c)     Prior to the expiration of any Remedies Notice Period pursuant to paragraph 11(b) above, the Debtor, any Creditors' Committee, any trustee, and/or the U.S. Trustee may seek an order from this Court to continue in effect the automatic stay of section 362(a) of the Bankruptcy Code and/or to obtain any other injunctive relief, and shall have

the burden of proof at any hearing on any such request to establish good cause for the requested relief based on circumstances that could not reasonably have been anticipated at the time of entry of this Interim Order. During the pendency of any such request (i) the Remedies Notice Period shall be deemed to continue (and shall not expire), and (ii) it shall be deemed that neither an Event of Default nor the Termination Date has occurred. Following the expiration of any Remedies Notice Period, no such relief shall be sought or granted.

(d)    Subject to paragraph 11(c) above, following the expiration of the Remedies Notice Period, the Debtor (or any trustee in the Chapter 11 Case or in a Successor Case) shall cooperate with the Prepetition Lender in connection with its exercise of rights and remedies by, among other things (in all instances subject to the Carve-Out), (i) providing at all reasonable times access to the Debtor's premises to the Prepetition Lender and its representatives and agents (including, without limitation, any collateral liquidator or consultant), (ii) providing at all reasonable times access to the Debtor's books and records to the Prepetition Lender and its representatives and agents, (iii) providing any information or documents reasonably requested by the Prepetition Lender or its representatives or agents, (iii) performing the other obligations of the Debtor in connection with the Prepetition Lender's exercise of rights and remedies as required by the Prepetition Loan Documents, and (iv) taking reasonable steps to safeguard and protect the assets and property subject to the Prepetition Liens and/or Replacement Liens, and (v) refraining from any interference with (and from any encouragement of others to interfere with) the Prepetition Lender's enforcement of its rights and remedies.

(e)    This Court shall retain exclusive jurisdiction to hear and resolve any disputes arising under or related to this Interim Order, including, without limitation, matters relating to the application or continuation of the automatic stay of section 362(a) of the Bankruptcy Code or any other injunctive relief that may be requested in accordance with this Interim Order.

**Miscellaneous**

12.    <u>Limitation on Section 506(c) Claims</u>.  Subject to the entry of the Final Order, no costs or expenses of administration that have been or may be incurred in this Chapter 11 Case or in any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against, the Prepetition Lender or any of its claims, the Carve-Out, or any assets or property subject to the Prepetition Liens and/or Replacement Liens, pursuant to section 506(c) or section 105 of the Bankruptcy Code or otherwise.  Subject to the entry of the Final Order, no action, inaction, or acquiescence by the Prepetition Lender shall be deemed to be, or shall be considered evidence of, any alleged consent to a surcharge against the Prepetition Lender, any of its claims, the Carve-Out, or any assets or property subject to the Prepetition Liens and/or Replacement Liens.

13.    <u>No Marshaling</u>.  Subject to the entry of the Final Order, the Prepetition Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the assets or property subject to the Prepetition Liens and/or Replacement Liens, or otherwise.  Without limiting the generality of the foregoing, subject to the entry of the Final Order, no party other than the Prepetition Lender shall be entitled, directly or indirectly, to

direct the exercise of rights or remedies or to seek (whether by order of this Court or otherwise) to marshal or otherwise control the enforcement of the Prepetition Liens or Replacement Liens.

14.      <u>Equities-of-the-Case Waiver</u>.    Subject to the entry of the Final Order, the Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition Lender with respect to any proceeds, product, offspring, or profits of any of the Collateral, or otherwise.

15.      <u>Additional Perfection Measures</u>.

(a)      All the Replacement Liens shall be deemed perfected by operation of law immediately upon entry of this Interim Order and shall have, and be entitled to, the priorities as provided in this Interim Order.  Neither the Debtor, nor the Prepetition Lender, shall be required to enter into or obtain any landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers, or any other waiver or consent, or to file or record any financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien, or similar instruments in any domestic or foreign jurisdiction (including, without limitation, trademark, copyright, trade name, or patent filings with the United States Patent and Trademark Office, United States Copyright Office, or any similar domestic or foreign agency with respect to intellectual property, or filings with any other federal, state, local, or foreign agencies or authorities), or obtain consents from any licensor, licensee, or similarly situated party in interest, or take possession of any assets or property, or take any other action in order to validate and to perfect the Replacement Liens or to establish the priorities as provided in this Interim Order.

(b)      If the Prepetition Lender, in its sole and absolute discretion, chooses to take any action to obtain consents from any landlord, licensor, or other party in interest, or to file or record any mortgages, financing statements, notices of lien, or other notices, documents, or instruments, or to otherwise record or perfect such security interests and liens, such Prepetition Lender is hereby authorized, but not directed to, take such action and/or to request that the Debtor take such action on its behalf (and the Debtor is hereby authorized to take such action) and:

(i)      any such notices, documents, or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)      no defect in any such act shall affect or impair the validity, perfection, and enforceability of the liens granted under this Interim Order.

(c)      In lieu of obtaining such consents or filing or recording any such mortgages, financing statements, notices of lien, or similar documents or instruments, the Prepetition Lender may, in its sole and absolute discretion, choose to file or record a true and complete copy of this Interim Order in any place in which any such documents or instruments would or could be filed, together with a description of collateral, and such filing by the Prepetition Lender shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien, or similar documents or instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

16.      <u>Application of Collateral Proceeds</u>.  Subject to the Carve-Out (as set forth in paragraph 6) and paragraph 11(c) above, following the occurrence of any Termination Date

(including without limitation, as a result of the occurrence of any Event of Default under this Interim Order) and the expiration of the Remedies Notice Period, the Debtor is hereby authorized and directed to remit to the Prepetition Lender one-hundred percent (100%) of all collections on, and proceeds of, all assets and property subject to the Prepetition Liens and/or the Replacement Liens, including, without limitation, all Cash Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified, without the need for further order of the Court, to permit the Prepetition Lender to retain and apply all such collections, proceeds, and Cash Collateral (A) first, to satisfy or reduce the Adequate Protection Claim, and (B) second to satisfy or reduce the Prepetition Obligations in accordance with the Prepetition Loan Documents, until indefeasibly satisfied in full.  In furtherance of the foregoing (subject in all instances to the Carve-Out), (a) all cash, checks, instruments, securities, investment property, and other items deposited by the Debtor (or other representative of the Estate) with any bank, brokerage firm, or other financial institution shall be subject to a valid, binding, enforceable, perfected, and non-avoidable first-priority security interest and Replacement Lien in favor of the Prepetition Lender; and (b) each bank, brokerage firm, and other financial institution with an account of the Debtor is hereby authorized and instructed to comply (without the need for consent of the Debtor or any other representative of the Estate) with any instructions originated by the Prepetition Lender (or its designee) to such bank, brokerage firm, or financial institution directing the disposition of cash, checks, instruments, securities, investment property, or other items deposited by the Debtor (or other representative of the Estate) from time to time, including, without limitation, any instruction to send to the Prepetition Lender (or its designee) by wire transfer (to such account as

the Prepetition Lender (or its designee) shall specify) or in such other manner as the Prepetition

Lender (or its designee) shall direct, all cash and other property held for, or owed by it to (or for

the credit or benefit of), the Debtor or the Estate.

17.     <u>Cash Management Systems</u>.  Subject to any cash management order entered (or to

be entered) by this Court, the Debtor is authorized and directed to maintain its cash management

system in a manner consistent with this Interim Order and any order of this Court concerning the

maintenance of the Debtor's cash management system.

18.     <u>Delivery of Reports, Pleadings, and Documents</u>.   In addition to all other

requirements set forth in this Interim Order, the Debtor shall deliver to the Prepetition Lender:

(i) all financial reports, budgets, and forecasts as and when required under the Prepetition Loan

Documents (as amended by the Second Limited Forbearance Agreement dated as of

December 30, 2019); (ii) all financial reports, budgets, and forecasts delivered by the Debtor to

any Creditors' Committee or to the U.S. Trustee; (iii) to the extent reasonably feasible, copies of

all proposed pleadings and other papers to be filed by the Debtor with the Court, at least 48 hours

in advance of such filing; (iv) copies of all pleadings and other papers filed by the Debtor with

the Court, promptly upon such filing; (v) copies of any indications of interest, requests for

information, term sheets, proposals, letters of intent, and/or agreements, in each case to the

extent received by the Debtor within ninety (90) days before the Petition Date or at any time

from and after the Petition Date, and in reference to any potential purchase or licensing of assets

or property of the Estate or any potential plan of reorganization or liquidation; and (vi) copies of

any and all other financial or other information or documentation that is reasonably requested by the Prepetition Lender.

19.     <u>Access to Books and Records</u>.  The Debtor will (a) keep proper books, records, and accounts in accordance with GAAP, applied consistently, in which full, true, and correct entries shall be made of all dealings and transactions in relation to its business and activities; (b) cooperate and consult with the Prepetition Lender concerning the Debtor's business and affairs; (c) provide to the Prepetition Lender in addition to all data and information expressly required under the provisions of this Interim Order, any additional data and information that are provided by the Debtor to any Creditors' Committee or any Creditors' Committee's legal or financial advisors; (d) permit, upon reasonable notice and at reasonable times, representatives of the Prepetition Lender to visit and inspect any of the Debtor's properties, to examine and make abstracts or copies from any of its books and records, to conduct a collateral audit and analysis of its inventory and accounts, to tour the Debtor's business premises and other properties, and to discuss, and provide views with respect to, the Debtor's affairs, finances, properties, business operations, and accounts with the Prepetition Lender's officers, employees, consultants, and accountants, as often as may reasonably be desired; and (e) permit representatives of the Prepetition Lender to consult with the Debtor's management on matters concerning the general status of the Debtor's business, financial condition, and operations.

20.     <u>Lender Not Responsible Person</u>.  Subject to any applicable Challenge pursuant to paragraph 8 above, in (a) consenting to the use of Cash Collateral, (b) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents,

(c) administering the loans and financial accommodations extended under the Prepetition Loan Documents; (d) extending other financial accommodations to the Debtor under the Prepetition Loan Documents, (e) making the decision to collect the indebtedness and obligations of the Debtor, (f) cooperating in the Debtor's efforts toward a reorganization, sale, and/or liquidation, or (g) otherwise engaging in transactions and communications with the Debtor, the Prepetition Lender shall not by reason thereof be considered to be exercising control over any operations of the Debtor or acting in any way as a responsible person, or as an owner or operator under any applicable law or regulation, including, without limitation, any environmental law (including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. 6901, et seq., as either may be amended from time to time), any labor law, or any other federal or state statute, regulation, or doctrine.

21.    <u>Successors and Assigns</u>.  The provisions of this Interim Order shall be binding upon, and shall inure to the benefit of, the Debtor, the Estate, the Prepetition Lender, any Creditors' Committee, and each of their respective successors and assigns, including, without limitation, any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code, any examiner with expanded powers, any responsible officer, any estate administrator or representative, any liquidation trustee, and any similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code.  The provisions of this Interim Order shall also be binding on all of the Debtor's creditors and equity holders, and all other parties in interest.

22.     <u>Binding Nature of Interim Order</u>.  Unless otherwise consented to in writing by the Prepetition Lender in its sole and absolute discretion, the rights, remedies, powers, privileges, claims, liens, and priorities of the Prepetition Lender provided for in this Interim Order or otherwise shall not be modified, altered, eliminated, or impaired in any manner by any subsequent order or judgment (including, without limitation, by any confirmation order or sale order), by any plan of reorganization or liquidation in this Chapter 11 Case, by the dismissal or conversion of this Chapter 11 Case, or in any Successor Case.

23.     <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Prepetition Lender may have to raise any matter or be heard on any matter brought before the Court.  Except as expressly provided in this Interim Order, the Prepetition Lender retains and reserves all of its rights and remedies.

24.     <u>Sale/Conversion/Dismissal</u>.

(a)     An Event of Default will occur in the event that the Debtor at any time seeks (or supports any other party in seeking) the entry of any order, or proposes (or supports any other party in proposing) any plan, in either case that provides (1) for the sale or other disposition of the Debtor's business, or of any material portion of the Debtor's intellectual property, or of all or substantially all of the assets of the Estate, or (2) for the transfer or issuance of any equity interest in the Debtor or in any successor to the Debtor, *unless*, in connection and concurrently with any such event described in (1) or (2) above, either (i) the proceeds of such sale, transfer, issuance, plan, or other disposition are or will be sufficient to indefeasibly pay in full in cash any Adequate Protection Claim, and any such Adequate Protection Claim is required to be

indefeasibly paid in full in cash and satisfied on the closing date of such sale, transfer, issuance, plan, or other disposition, or (ii) the Prepetition Lender consents to such sale in writing in its sole and absolute discretion.  For the avoidance of doubt, the Prepetition Lender retains and reserves the right to file an objection to any proposed sale, transfer, issuance, plan, or other disposition on any basis.

(b)     An Event of Default will occur in the event that the Debtor at any time seeks (or supports any other party in seeking) the entry of any order dismissing or converting this Chapter 11 Case under section 305 or section 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee or an examiner with expanded powers (having powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code), in each case unless and until (i) the Prepetition Obligations and Adequate Protection Claim are to be indefeasibly paid in full in cash and satisfied as a condition to the implementation of such order, or (ii) the Prepetition Lender expressly consents in writing to such relief in its sole and absolute discretion.  For the avoidance of doubt, the Prepetition Lender retains and reserves the right to file an objection to any proposed dismissal, conversion, or appointment on any basis.  If an order dismissing or converting this Chapter 11 Case under section 305 or section 1112 of the Bankruptcy Code or otherwise is at any time entered, this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Adequate Protection Rights.

25.     Limits on Liability.  Nothing in this Interim Order shall in any way be construed or interpreted to impose upon the Prepetition Lender any liability for any claims arising from any

activities by the Debtor in the operation of its business or in connection with its restructuring efforts.

26.   <u>Priority of Terms</u>.  In the event of any conflict between (a) any term or provision of the Motion, of any other order of this Court, or of any other document or agreement, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

27.   <u>No Third-Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor, any equityholder, or any direct, indirect, or incidental beneficiary.

28.   <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of any order (i) dismissing this Chapter 11 Case or (ii) converting this Chapter 11 Case to a case pursuant to chapter 7 of the Bankruptcy Code; and (b) the Replacement Liens and the Adequate Protection Claim shall remain fully effective, binding, enforceable, duly perfected, and non-avoidable in this Chapter 11 Case, in any Successor Case, or after any such dismissal.  The Replacement Liens and the Adequate Protection Claim shall maintain their priorities as provided in this Interim Order, and shall not be modified, altered, eliminated, or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, or by any conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or by dismissal of this Chapter 11 Case, or by any other act or omission, until all of the Prepetition Obligations and Adequate Protection Claims have been indefeasibly paid in full in cash and completely satisfied.

29.    <u>Adequate Notice/Scheduling of Final Hearing</u>.  The notice given by the Debtor of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c) and the Local Rules and, under the circumstances, was adequate and sufficient.  No further notice of the request for the relief granted at the Interim Hearing is required.  The Debtor shall promptly mail copies of this Interim Order and notice of the Final Hearing to: (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) the Debtor's twenty (20) largest unsecured creditors; (vi) counsel to the Prepetition Lender; (vii) all other known parties asserting a lien against any of the Debtor's assets; and (viii) any party that has as of the date of this Interim Order requested special notice pursuant to Bankruptcy Rule 2002(i).  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and shall be filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Eastern) by the following: (i) proposed counsel to the Debtor, (a) Goodwin Procter LLP, 620 Eighth Ave., New York, NY 10018 (Attn: Nathan A. Schultz (nschultz@goodwinlaw.com) and Barry Z. Bazian (bbazian@goodwinlaw.com)) and (b) Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: L. Katherine Good (kgood@potteranderson.com); (ii) counsel to the Prepetition Lender,  Pachulski, Stang, Ziehl & Jones, LLP, (Attn: Jeffrey Davidson, Jdavidson@psajlaw.com) and (iii) if any statutory committee has been appointed in the Chapter 11 Case, counsel to such committee.  The Court

shall conduct a Final Hearing on the Motion commencing on June ___, 2020, at __:__0 __.m. (Eastern).

30.     <u>Immediate Binding Effect</u>.  This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 4001(a)(3), 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed immediately to enter this Interim Order on the Court's docket in this Chapter 11 Case.

31.     <u>Proof of Claim</u>.  The Prepetition Lender shall not be required to file a proof of claim in the Chapter 11 Case or in any Successor Case.  The Debtor's Stipulations shall be deemed to constitute a timely filed proof of secured claim for the Prepetition Lender upon entry of the Interim Order, and the Prepetition Lender shall be treated under section 502(a) of the Bankruptcy Code as though it had filed a timely proof of claim, notwithstanding any order entered by the Court concerning the establishment of a bar date for the filing of proofs of claim in this Chapter 11 Case or in any Successor Case.  The Prepetition Lender is hereby authorized and entitled, in its sole discretion, but not required, to file a proof of claim in this Chapter 11 Case or in any Successor Case.

32.     <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

**<u>EXHIBIT A</u>**

## Proteus Digital Health
*Weekly Cash Flow Forecast*
*(US$ in thousands)*

| | Forecast 1 | Forecast 2 | Forecast 3 | Forecast 4 | Forecast 5 | Forecast 6 | Forecast 7 | Forecast 8 | Forecast 9 | Forecast 10 | Forecast 11 | Forecast 12 | Forecast 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week ending Friday** | Week of 6/19/20 | Week of 6/26/20 | Week of 7/3/20 | Week of 7/10/20 | Week of 7/17/20 | Week of 7/24/20 | Week of 7/31/20 | Week of 8/7/20 | Week of 8/14/20 | Week of 8/21/20 | Week of 8/28/20 | Week of 9/4/20 | Week of 9/11/20 |
| **CASH FLOW** | | | | | | | | | | | | | |
| **Receipts:** | | | | | | | | | | | | | |
| Collections: | | | | | | | | | | | | | |
| Otsuka | $ - | $ - | $ 4,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| COGS | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | - | - | - | - |
| Other | - | - | 914 | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | 20 | 20 | 4,934 | 20 | 20 | 20 | 20 | 20 | 20 | - | - | - | - |
| **Operating Disbursements:** | | | | | | | | | | | | | |
| Payroll | - | - | 607 | - | 607 | - | 607 | - | 607 | - | - | - | - |
| Retention | - | - | 1,725 | - | - | - | - | - | - | - | - | - | - |
| Benefits | - | 3 | 170 | 40 | - | 40 | 6 | 207 | - | - | - | - | - |
| Rent | - | - | 600 | - | - | - | - | 600 | - | - | - | - | - |
| Insurance | 5 | - | - | - | 5 | - | - | - | - | - | - | - | - |
| Utilities | 8 | - | 49 | 27 | 8 | - | - | 49 | 27 | - | - | - | - |
| Product Development Professional Services | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | - | - | - | - |
| IT Services | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | - | - | - | - |
| COGS | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | - | - | - | - |
| Corporate Legal | - | 50 | - | - | - | - | - | - | - | - | - | - | - |
| Other operating | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | - | - | - | - |
| **Total Operating Disbursements** | 93 | 133 | 3,231 | 147 | 700 | 120 | 693 | 936 | 714 | - | - | - | - |
| **Net Operating Cash Flow** | (73) | (113) | 1,703 | (127) | (680) | (100) | (673) | (916) | (694) | (1,599) | (1,599) | (1,599) | (1,599) |
| *cumulative* | (73) | (113) | 1,590 | 1,463 | 784 | 684 | 11 | (905) | (1,599) | | | | |
| **Non-Operating Disbursements:** | | | | | | | | | | | | | |
| Other non-operating | 280 | 355 | 355 | 355 | 305 | 355 | 305 | 480 | 245 | 180 | 100 | 100 | 100 |
| **Total Non-Operating Disbursements:** | 280 | 355 | 355 | 355 | 305 | 355 | 305 | 480 | 245 | 180 | 100 | 100 | 100 |
| **Net Cash Flow** | (353) | (468) | 1,348 | (482) | (985) | (455) | (978) | (1,396) | (939) | (180) | (100) | (100) | (100) |
| *cumulative* | (353) | (468) | 880 | 398 | (586) | (1,041) | (2,019) | (3,415) | (4,354) | (4,534) | (4,634) | (4,734) | (4,834) |
| **LIQUIDITY** | | | | | | | | | | | | | |
| **Cash** | | | | | | | | | | | | | |
| Beginning Balance | 7,316 | 6,869 | 6,401 | 7,749 | 7,267 | 6,283 | 5,828 | 4,850 | 3,454 | 2,515 | 2,335 | 2,235 | 2,135 |
| add: Net Cash Flow | (353) | (468) | 1,348 | (482) | (985) | (455) | (978) | (1,396) | (939) | (180) | (100) | (100) | (100) |
| less: Previous week outstanding checks | 95 | - | - | - | - | - | - | - | - | - | - | - | - |
| add: Current Week Outstanding Checks | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Ending Cash** | 6,869 | 6,401 | 7,749 | 7,267 | 6,283 | 5,828 | 4,850 | 3,454 | 2,515 | 2,335 | 2,235 | 2,135 | 2,035 |

Note: Assumes 8/15 sale date.

**Proteus Digital Health**

Forecast – Professional Fee Assumptions

| | Forecast 1 Week of 6/19/20 | Forecast 2 Week of 6/26/20 | Forecast 3 Week of 7/3/20 | Forecast 4 Week of 7/10/20 | Forecast 5 Week of 7/17/20 | Forecast 6 Week of 7/24/20 | Forecast 7 Week of 7/31/20 | Forecast 8 Week of 8/7/20 | Forecast 9 Week of 8/14/20 | Forecast 10 Week of 8/21/20 | Forecast 11 Week of 8/28/20 | Forecast 12 Week of 9/4/20 | Forecast 13 Week of 9/11/20 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Debtors:** | | | | | | | | | | | | | | |
| Goodwin | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $115 | $75 | $75 | $75 | $75 | $1,335 |
| Sierra | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 25 | 25 | 25 | 25 | 550 |
| Investment Banker | - | 75 | 50 | - | - | - | - | - | - | - | - | - | - | 125 |
| Local Counsel | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 25 | 25 | - | - | - | 450 |
| PR | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Claims Agent | - | - | - | 50 | - | 50 | - | 50 | - | - | - | - | - | 150 |
| **Creditors:** | | | | | | | | | | | | | | |
| Lender Counsel | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 65 | 55 | 55 | - | - | - | 630 |
| Committee Professional Fees | - | - | 25 | 25 | 25 | 25 | 25 | 25 | - | - | - | - | - | 150 |
| UST | - | - | - | - | - | - | - | 125 | - | - | - | - | - | 125 |
| **Total** | $280 | $355 | $355 | $355 | $305 | $355 | $305 | $480 | $245 | $180 | $100 | $100 | $100 | $3,515 |